IN THE MATTER OF THE PRESIDENT, DIRECTORS AND COMPANY OF THE FRANKLIN BANK IN THE CITY OF NEW YORK.

The depositors of money in a bank are only general creditors of the corporation, and in case of a failure of the bank, they are not entitled to a priority of payment over bill holders or other creditors.

Nov. 10th. THIS was a motion made in behalf of the depositors of money in the Franklin Bank for an order directing the receiver to pay to them the amount of their deposits, before any distribution was made of the funds of the bank among its general creditors.

*D. B. Ogden*, for the depositors:—The receiver represents the directors of the bank. The directors are the mere agents of the stockholders; and the stockholders are in principle co-partners in all respects, except in not being liable beyond the capital stock of the company. A deposit is a trust confided to the directors of the bank. The directors are trustees, and the depositors *cestui que trusts*. By this trust, the directors are bound to pay to the depositors the amount of their deposits, whenever they shall draw for the same. This court will protect the rights of the depositors and cause this trust to be executed. In equity, the rule undoubtedly is, that funds are to be equally divided among creditors in proportion to their debts. But these debts are to be paid only out of the property of the debtor,

not out of property belonging to others in his hands. Where a factor becomes insolvent with the property of his principal in his hands, the creditors of the factor cannot resort to such property for a satisfaction of their debts. So an agent cannot pledge the property of his principal for his individual debt. (*Bay* v. *Coddington*, 5 John. Ch. R. 54; *Rodriguez* v. *Heffernan*, 5 John. Ch. R. 417.) Property held in trust does *not in case of the bankruptcy of the trustee, pass to his assignees for the payment of the debts of the trustee. So the creditors of the Franklin Bank can only be paid out of the property of the company, not out of the money deposited with the bank. Suppose a deposit of plate, the bank could not sell it to pay their debts. But it may be said that money could not be identified like plate, unless kept in a separate bag, and that, therefore, at law trover would not lie for it, unless it could be so identified. This rule does not exist in equity. There the depositor of money has the same right to it as if it had been kept in a separate bag, or it had been a specific chattel. A depositor is not a lender to the bank. He does not intend to incorporate his money with the funds of the company. He deposits it merely for safe keeping. He receives no interest for it, and gains no advantage by the deposit. He relies upon the integrity of the directors, and not upon the capital stock and funds of the bank, for the repayment to him of the sum deposited. On the other hand, the bill holders take the bills of the bank in the ordinary course of business. They receive an advantage by it, and derive a profit. They rely for the payment of the bills upon the capital stock of the bank, and upon its ability to pay its debts, not upon the deposits in the bank. The statute (Laws of N. Y. of 1825, p. 448) under which this proceeding against the Franklin Bank was instituted, and which directs this court to sequester the funds of the bank, and to distribute them among the creditors, does not impair the right of depositors to a preference, as depositors are not creditors, but *cestui que trusts.* The statute provides that the debts of the

1828.

In the Matter of the Franklin Bank.

[*250]

bank shall be paid out of its assets. Deposits are not assets. Upon an execution against a miller, the wheat of his customers, though mixed with his own, could not be sold on the execution, (*Seymour* v. *Brown*, 19 John. 44,) because it is a deposit in trust. For the same reason, the deposits in a bank cannot be applied to the payment of the debts of the bank.

*S. A. Foot*, contra:—The statute under which these proceedings are had disposes of this question. It provides two modes of proceeding against insolvent corporated *companies. The fifth section requires the court to sequester the funds, and to distribute them equally among the creditors of the bank. The seventeenth section authorizes the court, upon the application of a creditor of the bank, to issue an injunction against the officers and stockholders of the company, and to appoint a receiver, and to cause a distribution of the funds to be made among all the fair and honest creditors of the bank. This section omits the word equally. This, however, can make no difference, as both these sections are to be construed *pari materia*. It is within the policy of the act to secure an equal distribution of the funds among the creditors. The sixth section prohibits all assignments by the bank in contemplation of insolvency. An assignment by the bank in favor of the depositors would have been void. The debtor of a bank cannot, after its insolvency, purchase in its bills, and make them the subject matter of off-set. It is a rule in equity that creditors are to be paid equally, without giving any preference to creditors by specialty. The like rule prevails where all the real estate of one deceased is sold for the payment of debts by the order of a surrogate. The same rule exists in England, under the bankrupt law. There, the depositors with private bankers, who become bankrupt, are not entitled to any preference. The depositors place their money in the bank, under an implied agreement that the bank may use their deposits in its business. The bank derives a profit

from these deposits. The depositors gain an advantage by
the safe keeping of their money from fire and robbery.
They also, in consideration of their deposits, expect and
receive facilities for loans from the bank. But the bill
holders derive no profit from taking the bills. They re-
ceive them because the laws make them a part of the cur-
rency; and they receive them upon the ground that the
depositors by their deposits gave a credit to the bank. To
give a preference to the depositor over the bill holder
would be against the sense of the community, and would
impair the value of bank paper. The argument that where
there is a specific deposit, the depositor has a preference,
shows that where the deposit is not specific, no preference
*can be given. A depositor, to be entitled to a preference,                    [*252]
should seal up his money in a package. Upon such de-
posits, banks do not issue notes; but they always do upon
general deposits. Wherever the money of a principal has
gone into and become mixed with the funds of the agent,
it cannot be withdrawn. In such case, the principal can
only be paid *pari passu* with the other creditors. So
wherever the property of a *cestui que trust* cannot be traced
specifically in the hands of the trustee, it cannot be pro-
tected from the creditors of the trustee. So in this case,
as the money of the depositors has been mixed with the
funds of the bank, and cannot be specifically traced, it
must form a part of the common fund, to be distributed
equally among all the creditors of the bank in proportion
to their debts.

THE CHANCELLOR:—By the report of the receiver, it
appears that at the time he took the concerns of the bank
into his hands, the amount of moneys actually remaining
in deposit, including the bills of other solvent banks, was
only $7,957 88; while the amount of balances on the
books of the company, standing to the credit of individu-
als and other banks, usually denominated deposits, was
$250,671; of which sum, $84,000 was due to other banks.

This amount of deposits has been reduced by off-sets, &c., about $35,000, leaving the estimated amount of debts due from the bank, $340,000; of which, $125,000 belongs to bill holders, and the residue to depositors. It is supposed the assets of the bank will not be sufficient to pay more than fifty per cent. on the gross amount of such debts. The depositors claim a priority of payment; and if that claim is allowed, they will obtain about eighty per cent. of their debts, and the bill holders will receive nothing. The receiver, as the representative of all parties in interest, has very properly submitted the claims of the bill holders, who are numerous and widely dispersed, to an equal share of what may be saved from the wreck of the institution. The question has been fully and ably argued on both sides, and I have given to the subject the consideration which was demanded by the importance of the principles involved therein.

[*253]      *Many cases of extreme hardship and of great individual distress and suffering must exist among every class of creditors, and even among the stockholders. The misfortune of every failure of this kind is, that the loss generally falls upon those who are least able to bear it; upon the laboring class of community ; upon the aged and infirm, the friendless and unprotected, whose little all is holden in bills, left in deposit, or vested in the stock of such institutions. But cases of individual hardship must not be permitted to influence the opinion of the court when deciding great general principles.

The first question presented for consideration is, whether the depositors have a legal right or equitable claim to priority of payment ; and certainly, at the first blush, it does appear reasonable that those who have deposited their money in a bank for safe keeping should be preferred to those who have taken the bills of the institution in the ordinary course of business. It therefore becomes necessary to examine the principle on which this supposed right of preference is founded. It is undoubtedly supposed to be

based upon the great and leading principle of equity, that the property of one person, in the hands of a bankrupt, shall not be taken to pay the debts of another. It is on this ground that property of the principal in the hands of agents or factors cannot be taken to satisfy the debts of the latter: and the former has a right to claim the proceeds of his property so long as it can be traced and identified. (5 John. Ch. R. 417 ; 5 Ves. jun. 211.) It is therefore necessary for the decision of this question to ascertain the nature of these deposits, and see whether they come within this principle.

So far as I have been informed on the subject of banking operations, the greatest portion of the debts of a bank, usually denominated deposits, are not moneys actually deposited there for safe keeping. If such was the case, the depositor could always guard against the effect of an insolvency of the institution by making a special deposit; that is, by depositing his money in a box or bag, or by affixing some mark upon it, by which it could be distinguished from the general funds of the institution. If he did so, the bank would have no right to make use of it; and officers or agents who should convert *it·to the general purpose of the institution, without the consent of the depositor, would make themselves personally liable for the same. The depositor might also follow the money into the hands of third persons, who had received it with a knowledge of his rights, or who had not paid an equivalent therefor in the ordinary course of business. (*Coddington* v. *Bay,* 20 John. R. 637.) Every regular dealer with a bank has an open running account upon the books of the institution. In this account he is credited with all sums paid by him into the bank, whether the same are in specie, in checks, or in bills, on the same or other banks. In that account he is also credited with the proceeds of bills or notes discounted or collected for him; and in the same account he is charged with all checks drawn by him on the institution, in favor of himself or others, and with all other claims which are properly

[*254]

chargeable against him by the bank. If there is a balance due to the bank on this account, it is called an overdrawing, and the aggregate of balances due from the bank on these several accounts, is entered in the statement book as the amount of deposits. Hence, it sometimes happens that a person becomes a depositor in a bank without adding one cent to the funds. Thus, if the officers of the bank permit one of their customers to overdraw his account, and the check is placed to the credit of another, the latter becomes a depositor, although the drawer of the check is insolvent and unable to pay his overdrawing. And on the principle of preference contended for here, if another person had at the same time deposited an equal amount of specie and taken bills of the bank in lieu thereof, such depositor of a worthless check would be entitled to the whole of that specie, to the exclusion of the bill holder who had actually deposited the same.

Whenever money is specially deposited in a bank for safe keeping, it is at the risk of the depositor. If the same is stolen, lost or destroyed without any fault on the part of the officers of the bank, he must sustain the loss. Not so with the general depositor. The money, checks or bills which he deposits become the property of the bank, and he becomes a creditor. If they are stolen, lost or destroyed, or become of no value, the bank sustains the loss, and he is still a creditor. *He has no claim upon the money or bills deposited. The officers may use them as they please for the general purposes of the institution, and he is to all intents a general creditor of the bank. There is an implied assent on the part of the depositor, and the agents of the institution are legally authorized to issue bills and discount notes on the credit of such deposits. The depositor, therefore, has no valid claim to be paid in preference to the bill holders, who are also general creditors.

[*255]

One of the leading doctrines of this court is, that equality is equity ; and in all cases of bankruptcy, the creditor who claims a preference must show a legal right to, or a specific

lien upon the fund claimed. The injustice of giving the depositors a preference over the bill holders is strongly exemplified in the case before me. But a very small portion of the fund to be distributed could possibly have been the proceeds of deposits in the bank. The money found therein did not exceed one twenty-fifth part of the amount due to depositors. And a very considerable part of the fund to be distributed will arise from the sale of real estate purchased many years since, probably with a part of those very bills which were in circulation when the bank stopped payment. Having arrived at the conclusion that the depositors have no legal or equitable claim to priority of payment, it becomes unnecessary to examine the question whether the act of April, 1825, requires an equal distribution of the property and effects of the institution among all the creditors. It is sufficient on this subject to observe, that the section under which the proceedings in this case have been instituted gives no preference to any class of creditors; and the only section of the act which prescribes the manner of distributing the effects of an insolvent corporation directs an equal distribution.

I shall therefore decree an equal distribution of the assets among all the creditors of the Franklin Bank, and shall direct the receiver to make the first dividend as soon as he shall be able to divide twenty-five per cent. on the gross amount of the debts.