The facts found by the learned justice, who tried this case without a jury, do not justify his conclusion of law, that the bill in question on the receipt thereof by the Ohio Life Insurance and Trust Company became, as between it and James Lyell, on whose account it was received, the property of the company, and could be used by it as its other funds were used. It is not shown nor claimed that there was an express agreement between the company and Lyell, that he should, on the receipt by it of the bills remitted, be entitled to have a credit in the account between them for the amount thereof; nor is it found that in the course of the dealings between them any credit was in fact ever given to him for any of such bills till the proceeds thereof were realized and received. All that is found in relation to such dealings is that Lyell, who was a banker at Detroit and kept an account with that company at its office in the city of New York, made from time to time between *Page 291 
June, 1857, and the 24th of August in that year, remittances to it and drew drafts upon it: that he was a large depositor with it of money and bills: that there was an arrangement between him and it that he should be allowed interest at the rate of four per cent per annum on his average balances, and that on the said 24th day of August, on which day the company failed and suspended payment, Lyell had standing to his credit on the books of the company a cash balance of $108,483.56 exclusive of the bill in question: that such bill was received by the company in the usual course of business on the 20th of August for account of Lyell, who had been in the habit of remitting in the same way that this was: that the bill was on the day of its receipt accepted by the drawees on presentation, and returned to the company, in whose possession it remained till its transfer to the defendant on the 24th day of the same month, and that Lyell had at that time not been credited with said bill by the company; but after the commencement of this action the book-keeper of the assignees of the company, without the knowledge of Lyell or the plaintiff, credited Lyell with the proceeds thereof in his account with the company.
The only other fact bearing on this point is, that after the stoppage of the company in New York, it continued to do business in Cincinnati, Ohio, and that Lyell drew his drafts on it from time to time during the month of September, 1857, to the amount of $98,236.84. This course of dealing, and the arrangement referred to for the allowance of interest to Lyell on his average balances, would, it is conceded, create the ordinary relation of debtor and creditor between the company and Lyell in respect to the money received by it; but no inference can be legally drawn therefrom, that the bills so remitted were credited, or were intended to be credited, as cash on the receipt thereof, or that the company ever paid or were bound to honor drafts on account of the same until paid. Lyell was a depositor of money as well as of bills, and although "he made remittances to the said company and drew drafts upon it," it does not follow from those facts alone that the drafts were drawn on account of or were limited to the remittances, nor if *Page 292 
they were, that they might be made for the bills remitted before collection, as well as the money. No reasons are disclosed in the case from which it can be reasonably inferred, that the company would consent or had any inducements to consent to treat as cash, and make itself debtor for, every bill that might be remitted to it without reference to the standing and responsibility of the parties, which in many cases might be unknown, especially when Lyell himself, as in the case of the bill in question, was not a party to such bill. It is more reasonable to assume that it would at least reserve the right to elect, whether to give credit absolutely or not before the proceeds were realized; and until such election was made, and credit was in fact given therefor, the bill would be held by it as the property of Lyell, and not its own. When, therefore, it appears that the bill in question was retained in the possession of the company after its acceptance, and that no credit had been given for it at the time it was passed to the defendants, and when nothing is disclosed in the whole course of dealings between the parties to show that any bill was ever credited or agreed to be credited in account before its collection, or that Lyell ever drew or was entitled to draw upon the company, or that it was bound to accept drafts otherwise than upon and for funds actually received in cash, it must be considered that the company at the time of the transfer stood in the relation of agents for its collection merely. There is no ground based on those dealings (and no other is claimed), for the conclusion that the ordinary relation of debtor and creditor between the company and Lyell in relation to the bill in question existed, or that it had become as between them the property of the company. Lyell consequently continued to be the owner of it at the time of its transfer, and the defendants never acquired any right to it as against him or the plaintiff who had succeeded in his title. The facts found by the court below, show that they received it, with other securities, to secure a precedent indebtedness of the company to them, and that they neither advanced nor paid any new consideration on receipt of this bill, and they only gave credit for its proceeds after it was paid, in extinguishment of so *Page 293 
much of the defendants' account against the company. The defendants therefore were not bona fide holders thereof for value, and are not entitled to its proceeds as against the plaintiff. It follows, that the judgment of the Superior Court at special term was erroneous, and that the order for a new trial was properly granted, and the plaintiff under the stipulation is entitled to judgment absolute.
All the judges concurring,
Ordered accordingly.