BANK OF LOUISIANA, (THORNHILL v.)
    See Cases Nos. 13,990–13,992.

## Case No. 890.

### In re BANK OF MADISON.

[5 Biss. 515;[1] 9 N. B. R. 184.]

District Court, W. D. Wisconsin. Jan., 1874.

RELATION OF BANK TO CUSTOMERS — COLLECTIONS —BURDEN OF PROOF—COSTS.

1. The relation between a bank and its customers is that of simple debtor and creditor—not principal and agent—and does not partake of a fiduciary character.
    [Cited in Re Smith, Case No. 12,990.]

2. A note deposited for collection, and passed to the credit of the depositor, becomes the property of the bank, and on the bankruptcy of the bank, the proceeds go to the general creditors. The fact that the account was made good before the collection of the note does not make the bank a trustee as to the proceeds.
    [See Bank of Commerce v. Russell, Case No. 884.]

3. A customer of an insolvent bank must make out a very clear case, before the court will allow payment of his claim in full.

4. Where a petition to establish a right to payment in full has assumed the form of a regular suit, costs and a docket fee may be taxed against the petitioner.

In bankruptcy. This was a petition by the Madison Manufacturing Company, praying that the assignee may be ordered to pay over five hundred and seventeen dollars and forty cents, claimed to belong to said company. On the 18th day of August, 1873, the said company took a note of E. W. Skinner, for five hundred dollars, due in September, to the bank for collection and got it discounted, and the proceeds passed to its credit on the bank books. The company's account was then overdrawn to an amount exceeding the avails of the note thus passed to its credit. The company indorsed the note in the usual form, and the bank transmitted it to its correspondent in Sioux City, Ia., for collection. Not being paid at maturity, it was protested. It was, however, finally paid in installments, and the proceeds transmitted, as paid, by drafts on the Third National Bank of Chicago, which were received after the bank had virtually suspended payment. The Manufacturing Company, before the commencement of proceedings in bankruptcy, demanded the drafts, but the bank declined to give them up, and they were delivered up to the assignee after his appointment. Without the credit of the note the company's account remained overdrawn until the 6th of Septem-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ber. Deposits were made from other collections from time to time thereafter, so that when the drafts for this note were received the bank, exclusive of this credit, was indebted to the company. On the part of the company, it was shown, on the hearing, that the note was taken there for collection, and that the transaction took the form of a transfer, for the purpose of facilitating the collection, and that it was agreed or understood that the company was not to draw against the credit until it was collected. [This is sworn to by Mr. Hudson, the general superintendent of the company, and Mr. Webster, the cashier of the bank.][2]

Smith & Lamb, for petitioner.
H. S. Orton and Wm. F. Vilas, for assignee.

HOPKINS, District Judge. Notwithstanding the special circumstances shown by the petitioner, the fact, nevertheless, remains, that the note was credited to the company in the ordinary way, and subject to its order, like any other deposit, and the company had the benefit of it in the payment of its overdrawn account at the bank from the 18th of August to the 6th of September. The note and the avails belonged to the bank, during that period, at least, and if the note had been collected during that time the company would not have been entitled to these drafts, or the avails of the note. That being so, has the company, by making good its account on [after][2] the 6th of September, in the ordinary way of depositing, without any special agreement to that effect, changed its relation or condition so as to be entitled to the drafts as the proceeds of the note? And, further, does this case fall within the law governing or relating to principal and agent, so as to authorize the company, as principal, to follow the proceeds and reclaim them from the hands of the assignee in this manner? In case of the insolvency or bankruptcy of an agent, property consigned to him to sell, and notes left with him to collect, and the proceeds of such, whether in notes or money, so long as the same can be distinguished from the mass of the agent's or factor's property, do not pass to the assignee in bankruptcy, and if received by them may be recovered by the principal at law, or, in other words, the right of the principal thereto ceases only when the means of ascertainment or identification fail.

The petitioner's counsel contended for the application of this doctrine to this case, and claimed that no property or choses in action held by the bankrupt in a fiduciary capacity passed to the assignee, citing, in support thereof, Price v. Ralston, 2 Dall. [2 U. S.] 60; Denston v. Perkins, 2 Pick. 86; Taylor v. Plumer, 3 Maule & S. 562; 3 Pars. Cont. 478 et seq.; Rodriguez v. Heffernan, 5 Johns. Ch. 417.

As to the correctness of these general principles there can be no question. But for the decision of this case it becomes necessary to ascertain the nature of the business between bankers and their customers, and to see whether such business comes within these principles; if not, then we must look in some other rule for its determination.

In deciding this case, it must be borne in mind that the petitioner was a customer of this bank, and that the relation of banker and customer existed between him and the bank, and as a regular dealer with the bank, he had an open and running account, in which he was credited with all sums paid into the bank, and with the proceeds of all notes and bills discounted or collected, and was charged with all checks drawn on the institution. In Re Franklin Bank, 1 Paige, 249, 254, the chancellor says, Whenever money [or notes are][4] is specially deposited in a bank for safe keeping, it is at the risk of the depositor. If the same is stolen, lost or destroyed without the fault of the bank or its officers, the depositor sustains the loss. Not so with a general depositor. The money, checks, or bills which he deposits become the property of the bank, and he becomes a creditor; he has no claims upon the money or bills deposited. The officers may use them as they please, and he is to all intents a general creditor of the bank, and the bank may use them as it sees fit, and there is an implied assent to such use by the depositor. According to that doctrine, the relation of a bank with its dealers and depositors is that of an ordinary debtor, and must be governed by the law relating to transactions between debtor and creditor.

In Smedes v. Bank of Utica, 20 Johns. 372, which was an action for damages against the bank for omitting to duly present and protest a note left with it for collection, the bank set up a want of consideration for its undertaking to collect the bill. Woodworth, J., who delivered the opinion of the court, page 379, says: "It will be conceded that had this been an undertaking by an individual to demand payment and give notice, it would be a nudum pactum; * * * but the case of banking institutions is widely different. They are established to aid the commerce of the country, by giving facilities to the moneyed corporations of the community, * * * to enlarge the amount of actual capital. * * * The operations of a bank principally consist in loaning money and discounting notes, which are direct and immediate sources of profit. Incident to the business of a bank is the receiving of notes from their customers for collection; when paid, the money is placed to the credit of the depositor, and remains in bank until called for." And as profits might arise from such a transaction and deposit, it was held a sufficient consideration for the defendant's undertaking to

collect the note. I cite this to show the great dissimilarity between the way an agent transacts the business of his principal, and the duties and obligations assumed by an agent towards his principal, and the way a banker deals with his customers, and the duties of such banker, in reference to the money collected for or deposited by his customers. It is the duty of an agent to pay over the money received or collected by him to his principal, not to use it for his individual benefit; whereas, there is an implied understanding that a banker may use and loan for the benefit of the bank the money of his customers, including that collected for them as well as that deposited.

That case shows, further, that there is an implied understanding that the money to be received from collections is to go on deposit in the bank, and in the absence of proof of an agreement that it was not to be passed to the account of the dealer, courts should give to such understanding the force of a contract that it was to be deposited in the ordinary way, and to be drawn out by checks as other money. Indeed the proof here is that the proceeds were to be deposited. The relation between bankers and their customers is most clearly laid down and defined in the case of Foley v. Hill, 2 H. L. Cas. 28, (decided in July, 1848.) It is there held to be the ordinary relation between debtor and creditor, with a superadded obligation to pay the customer's checks on demand, and it is there further held that it does not bear any analogy to the relation between principal and agent or factor, and does not partake of a fiduciary character. It is there said, that "money, when paid into a bank, ceases altogether to be the money of the principal; it is then the money of the banker, who is bound to return an equivalent by paying a similar sum to that deposited with him, when he is asked for it. * * * He is guilty of no breach of trust in employing it; * * * he is not bound to keep it or deal with it employing it as the property of his principal; * * * he is simply required to refund an equivalent sum."

That case distinguishes the relation of bankers and their customers from that of principal and agent, and shows that the obligation incurred by a banker, in the ordinary course of his business as such, with his customers, is not fiduciary in its nature, but, on the contrary, the liability is that of an ordinary debtor.

The case of Smedes v. Bank of Utica, supra, holds what we all know to be the fact, that the collection of notes is, in this country at least, a part of the ordinary business of a banker. Hence it follows that a banker, in receiving a note for collection from one of his customers, does not act as an agent, but is presumed to have undertaken the collection for the profit that might result to it from the deposit and use of the money as a banker. So that when a banker collects money for his dealers it is regarded as deposited and in the light of any other deposit, not as the money of the customer, nor is the customer entitled to it, but only to its equivalent as any other deposit.

This, it seems to me, is an answer to the claim of the petitioner in this case. These authorities show that the principle upon which the counsel rested the claim upon the hearing is not applicable, and cannot be invoked to authorize a recovery of this claim. But as hereinbefore stated the testimony does not sustain the position insisted upon, to wit: that the note was taken simply for collection. I think the transaction in its legal aspect widely different from such a case.

The note was, in fact, discounted, and the proceeds deposited and credited to the petitioner, and up to the time that its account was made good, belonged to the bank, and I cannot believe that the making good of the account afterwards changed the relation between the parties in contemplation of law. To grant the relief asked would be, in fact and in legal effect, paying the subsequent deposits the petitioner in full. To do this under so thin a disguise as that put forth, to wit: that the petitioner was not to draw from the funds until after the collection of the note, when at the time the account was overdrawn to an amount exceeding the proceeds, would be sacrificing the substance to preserve the shadow.

One of the cardinal doctrines of a court of equity is that equality is justice, and in all cases in bankruptcy, whether heard in this court sitting in bankruptcy, or a court of equity, a creditor who claims a preference must show a clear legal right to it. Cases of extreme hardship cannot but exist in all cases of bank failures. In such failures the loss generally falls upon those least able to bear it—upon the poorer classes and laborers, the aged and dependent, the friendless and unprotected, whose little all has been left on deposit without the thought of the possibility of losing it, and who are wholly unprepared for such an event.

And it is not exacting too much to require that a party dealing with the insolvent bank in the ordinary way, as the case shows the petitioner was, should make out a very clear case before a court should sustain a preference in favor of such parties over the other creditors.

The petitioner, in order to avoid the effect of the overdraft, proved by Mr. Hudson, the superintendent, that he had, standing in his individual name and as his own money, more than enough to balance the deficiency in the company's account, and that he had previously told the bank officers that his account should stand as a guaranty for any amount due from the company. This I have disregarded altogether, for the reason that, if he had so stated, it would be void

under the statute as being a promise to pay the debt of another, and not in writing. The bank charged the company with the money, and his undertaking, if made as he said, would be collateral and void under the statute, for the reason above stated. I therefore deny the prayer of the petition, and, as this matter has assumed the form of a regular suit or proceeding, and testimony been introduced as upon an ordinary trial, I think it just and proper that the petitioner should pay the costs to be taxed, including a docket fee of twenty dollars, to the attorneys of the assignee.

Many of these principles apply to the case of J. H. Rountree, who has filed and submitted a petition praying that the assignee be ordered to refund to him the amount of a draft drawn by J. Hodges & Co. upon the Second National Bank of Chicago, for forty-two dollars and forty cents, made payable to H. H. Rountree, his son, a minor, then a student in the University at Madison. The draft was dated on the 20th of September, 1873, and was presented to the bank to be cashed, and, as alleged in the petition, was not cashed, but was taken to be collected.

The bank received it to collect, and sent it forward, and the amount thereof, instead of being returned, was credited to the Bank of Madison by the Second National Bank, which was then a creditor of the Bank of Madison to quite a large amount, so, in point of fact, neither the bank nor assignee ever received the money upon it. The Second National paid it by crediting the overdrawn account of the Bank of Madison with the amount.

The officers of the bank must have known such would be the result when they received it to collect, and their conduct in so doing is deserving of the severest censure.

These facts are a sufficient answer to the petition of Mr. Rountree, and the prayer of his petition is therefore denied. But as no counsel were employed, or argument had by either party, no costs are charged to either party in his case.