No. 7908.

THE STATE OF LOUISIANA, EX REL. C. E. GIRARDEY, VS. THE SOUTHERN BANK. THE BANK OF COMMERCE, OPPONENT.

The Bank of Commerce sent to the Southern Bank for collection three checks on other banks in New Orleans. They were collected and the proceeds passed to the credit of the Bank of Commerce in its *general* account, as it had given no instructions for any special disposition of the money, but, on the contrary, drew against the proceeds of those checks, as an ordinary depositor. On the same day that the checks were collected, the assets of the Southern Bank were seized by the sheriff, and Receivers were appointed. The Bank of Commerce claims in this case the *restitutio ad integrum* of the proceeds of its three checks. *Held* that this bank was an ordinary depositor of the Southern Bank; that the proceeds of the three checks were mixed with its general funds, and the Bank of Commerce is no more than an ordinary creditor.

APPEAL from the Fourth District Court for the parish of Orleans. *Houston,* J.

---

*T. Gilmore & Sons* for the Bank of Commerce, Opponent and Appellant:

First—The Bank of Commerce, of St. Louis, having remitted to the Southern Bank, of New Orleans, three checks, aggregating $21,000, to be applied with the balance of its account in paying a check drawn by the remitting bank upon the collecting bank of $35,000 : and the Southern Bank having collected the money on the checks·on the morning of its suspension, and after it had ceased operations, but failed to apply the proceeds as advised, the remitting bank is entitled to the avails of the three checks in the hands of the liquidators. Succession of De Boisblanc, 32 An. p. 109, and other authorities•cited in the body of this brief.

Second—The relation between the two banks was that of principal and agent, and not that of depositor and depositary.

State of Louisiana ex rel. Girardey vs. The Southern Bank.

Third—When the agent mixes the funds of his principal with his own, so that they cannot be distinguished, the whole becomes trust property, and the demand of the principal upon the fund must be first satisfied.

*J. O. Nixon, E. D. White* and *E. J. Bermudez,* for the Receivers, Appellees:

First—A judgment of homologation constitutes *res adjudicata.* 14 L. 241.

Second—Where a check is collected by a monied institution, a *restitutio in integrum* of the assets realized therefrom, when no instruction to set them apart to be used in a particular way has been given, is impossible, the money having been, the moment it was received, placed in the general fund of the bank. 2 Wall. 256, 257.

Third—Where a party for whose benefit a check is collected by the bank to which it is given for collection, subsequently draws against the amount so realized, the relations existing between him and the bank are those of depositor and banker, and no other. 10 An. 342.

The opinion of the Court was delivered by

LEVY, J. On the 18th of March, 1879, the Southern Bank was, by decree of the Fourth District Court of the parish of Orleans, dissolved and commissioners were appointed to liquidate its affairs. On June 17th, 1879, the liquidators filed an account, known as "first provisional account," showing assets of the bank to be distributed to its ordinary creditors, being balance on hand, difference between total of privileged charges and claims to be paid in full and cash on hand, to wit: balance of $55,708 70. Among these creditors, the Bank of Commerce of St. Louis appears on the schedule accompanying the account, for the sum of $34,668 20. To this "first account" a number of oppositions was filed, but none by the Bank of Commerce. On the 28th of June, 1879, this account, after being in some items amended, was homologated as far as not opposed, and the funds on hand, as per the account, ordered to be distributed accordingly. A second provisional account was filed on the 20th of November, 1879, showing another balance for distribution among the creditors named, in addition to amount remaining on hand, as per first account, of $83,829 94. To this second account, among others there was filed on November 27th, 1879, an opposition of the Bank of Commerce. This opposition was made to the accounts and tableaux, in which, after setting forth that the Southern Bank had, on the 17th of March, 1879, received three several checks on other banks of New Orleans, for collection for said Bank of Commerce, the opponent avers that, when these checks were thus received, the directors of the Southern Bank, in charge thereof, "being aware of its insolvent condition, had determined upon the closing of said bank and the winding up of its affairs, and had passed a resolution transferring the drafts remitted to them for collection to the New Orleans Canal and Banking Company, and ought to have delivered said checks to the said Banking Company for collection, or returned them to petitioner;" that this was not done, but that, on the contrary, on the morning of the 18th of March, 1879, at or about the time

the sheriff took possession of the assets and property of said Southern Bank, under a writ of sequestration herein, the officers of said bank collected said checks, to the said amount of $21,000, belonging to petitioner, which went into the hands of said sheriff and is now in the hands of the liquidators, and which they propose to distribute among the creditors of said Southern Bank, as money belonging to said bank, whilst the same is the property of petitioner. Petitioner prays that the liquidators be ordered to pay to him the said sum of $21,000, by preference and privilege over all the creditors of said bank.

During the trial, the Bank of Commerce filed an amendment to its original petition, as follows: "And now comes the Bank of Commerce, of St. Louis, opponent herein, and to prevent any misapprehension as to the relief which it seeks, by its opposition herein, prays that, before any distribution of funds belonging to said Southern Bank, be made by the commissioners of liquidation of said bank, it be paid the said sum of twenty-one thousand dollars, as its own money and funds and not as the funds of said Southern Bank."

The liquidators representing the Southern Bank excepted to the opposition of the Bank of Commerce on the grounds: 1st. That the judgment homologating the first account, so far as not opposed, which is now final, is *res adjudicata* to the claim now made by said bank for the money as theirs; 2d. That said account, as homologated, is an estoppel and prevents the bank from claiming an ownership.

There was judgment dismissing the opposition of the Bank of Commerce, thus refusing its claim to be recognized either as privileged creditor or as the owner of the proceeds of the checks referred to, $21,000. From this judgment the Bank of Commerce has taken this appeal.

The grounds upon which the Bank of Commerce relies in support of its claim are these: The Southern Bank (is alleged to have) collected the money on the checks on the morning of its suspension, and after it had ceased operations, but failed to apply the proceeds as advised, and, therefore, the remitting bank is entitled to the avails of the checks in the hands of the liquidators.

The relation between the two banks was that of principal and agent, and not that of depositor and depositary.

When the agent mixes the funds of his principal with his own, so that they cannot be distinguished, the whole becomes trust property, and the demand of the principal upon the fund must be first satisfied.

The defendant, Southern Bank, on the other hand, contends: That the homologation of the first account, unopposed by the Bank of Commerce, in which said Bank of Commerce was recognized as an ordinary creditor, constitutes *res adjudicata* and estops it from maintaining this proceeding; that, where a check is collected by a monied institution, a

*restitutio ad integrum* of the assets realized therefrom, when no instruction to set them apart to be used in a particular way, has been given, is impossible, the money, having been, the moment it was received, placed in the general fund of the bank.

Where a party for whose benefit a check is collected by a bank to which it is given for collection, subsequently draws against the amount so realized, the relations existing between him and the bank, are those of depositor and banker, and no other, or, in other words, of debtor and creditor.

Defendant also contends that the Bank of Commerce has entirely failed to identify any specific money as that with which the checks were paid.

The facts which control the decision of this case are substantially these: The Southern Bank had been doing business with the Bank of Commerce and, on the 17th of March, 1879, the former received three checks from the latter, amounting to $21,000, for collection. At that time, there was to the credit of the Bank of Commerce in the hands of the Southern Bank a balance on deposit account of about $13,000. On the morning of the 18th of March, these checks were collected by the runner of the bank, in the usual way, i. e. by striking balances with the banks upon which the checks were drawn, by deducting the amount of checks held by them on the Southern Bank, and receiving the balances. The balances thus collected by the runner were turned into the bank in gross and then became mixed and confounded with the other funds of the Southern Bank. It appears from the record, that these balances were received from the runner between ten and eleven o'clock on the morning of the 18th of March and that the sheriff, under the sequestration proceedings, took possession of the bank and its assets shortly after twelve o'clock on that morning. The Bank of Commerce had drawn a check on the Southern Bank for $35,000 (being several hundred dollars in excess of the balance on deposit and the checks for $21,000), which was presented for payment shortly after nine o'clock on the morning of the 18th of March and left with the paying-teller on his suggestion. In the meantime the seizure having been made by the sheriff, on demand made, later in the morning, payment was refused.

On the checks being remitted for collection, no special instructions were given by the Bank of Commerce as to the disposition of their proceeds. The relations which had theretofore existed between the two banks, were those of banker and depositor; the check drawn for $35,000 had no particular identification with those remitted and received on the 17th March. The amount did not even correspond with the aggregate of the remitted checks and the balance in hands of Southern Bank; indeed, it exceeded this aggregate. The business relation continued, so

far as the record discloses, the same as had previously existed, and we can perceive nothing which changed the relations so far as even the $21,000 collected on the checks, were concerned; nothing to constitute the proceeds of the three checks a special deposit; nothing to take this transaction out of the rules governing the liabilities and responsibilities as to ordinary depositors in banks, or which takes it out of those general rules and subjects it to the operation of those in regard to principal and agent, or gives to the Southern Bank the character of *cestui que trust.*

"The relation of the depositor to the bank being that of a simple creditor, if the bank goes into insolvency the depositor has no right to any preference, but shall come in like any other creditor." Morse on Banks and Banking, 45; 1 Paige, 249.

The record does not show that, on forwarding the checks for collection, the Bank of Commerce instructed the Southern Bank to remit the proceeds; on the contrary, the Bank of Commerce drew against those proceeds, as well as for other amounts, before the checks had been collected. 5 Biss, 515; 10 La. 342.

The admixtion of the proceeds of the checks with the other funds of the bank is established by the proof, and this admixtion took place before the seizure by the sheriff. Although the bank was embarrassed in its financial affairs, we cannot say, that its failure or going into liquidation took place anterior to its receipt, in the manner hereinbefore mentioned, of the proceeds of the checks.

In the case of Reeves vs. State Bank, 8 Ohio, 56, 465, it was held that a *note deposited for collection,* if passed to the credit of the depositor in his *general* account, becomes the property of the bank, which becomes indebted unto him for the proceeds. If the bank becomes bankrupt, the proceeds are assets available to the general creditors. This rule, in our opinion, is equally applicable to a check deposited for collection. In this case, it is clear that there was an account current between those two banks just as between any other depositor and the bank.

In Marine Bank vs. Fulton Bank, 2 Wallace, 252, it was decided that money collected by one bank for another, placed by the collecting bank with the bulk of its ordinary banking funds and credited to the transmitting bank in account, becomes the money of the former. We think it would be otherwise if, when the checks or note were transmitted for collection, there were instructions, either to remit their proceeds or to hold them for special deposit, or for some special purpose; but here there were no such instructions, and the drawing upon the Southern Bank for an amount which, it is true, included the amount of the proceeds of the checks, cannot be construed by us as giving a character to the transaction other than that attaching to a mere depositor and banker, as described in the opinion in the case just cited.

There being no obligation resting upon the Southern Bank to keep the funds arising from these checks separate and apart from its other funds, and not even a fairly deducible intimation of such intention or desire on the part of the Bank of Commerce, no claim could be legally urged for the recovery of the identical funds collected, and the admixtion of these funds with the general funds of the collecting bank, having taken place in the usual course of business and justified by the character and relations of the parties, we cannot recognize any right in the Bank of Commerce to be paid by preference over other ordinary depositors, creditors of the Southern Bank. " Where endorsed bills of exchange are deposited by a customer with a banker, the latter has the absolute power of disposing of them; and, in the event of his bankruptcy, though the customer might recover such bills, as remained in specie, subject to the banker's lien for the balance of his account, yet he cannot follow the proceeds if they have been converted." ' Ewell's Evans on Agency, 128.

We do not think the plea of *res adjudicata* well taken.

It is urged, however, that there was *mala fides* on the part of the Southern Bank in receiving the proceeds of these checks and mixing them with its general assets, as it was on the eve of failure and declared bankruptcy. This is not shown to our satisfaction. It is true, a seizure of its assets was made on the very day of the collection, but it is not shown that this was within the knowledge of the bank, and it is not unusual that such disasters come suddenly upon banks as well as individuals, who are disappointed in getting available means which they reasonably expected and which would avert the disaster, or that the failure of others on whom they rely, suddenly precipitates their own failure to meet their engagements and liabilities.

Appellant contends that "when the agent mingles the funds of his principal with his own, so that they cannot be distinguished, the whole becomes trust property, and the demand of the principal upon the fund must be first satisfied." This proposition is entitled to no weight and its discussion and consideration are unnecessary, because it is based upon the assumption that the relation of principal and agent existed, and we hold that, in this case, there was no such relation.

In regard to the time at which the runner and the bank itself received the proceeds of the checks, our opinion heretofore expressed is deduced from the testimony in the transcript, and we are further satisfied from the evidence and all the circumstances and facts therein, that payments *were* made by the bank subsequent to the receipt by the bank of the funds collected by the runner.

We cannot perceive how the Bank of Commerce can, on legal principles, be entitled to any greater consideration, or have any preference to be paid over other depositors whose position, we think, is similar in legal

right to its own, and, to the extent of the losses sustained, equally un-
fortunate. It is entitled to no greater relief on account of its non-resi-
dence than the home creditors of the bankrupt depositary.

The judgment appealed from is affirmed with costs.

Rehearing refused.

The Chief Justice recuses himself, in this case, having been of counsel.