## METROPOLITAN NATIONAL BANK OF NEW YORK, RESPONDENT, *v.* WILLIAM LOYD, APPELLANT.

*Deposit of check — when the title thereto passes to the bank.*

Where a check, due at the time, is indorsed in blank and deposited by the payee upon general account in a bank with which such payee keeps an account, and is with the payee's knowledge and without dissent on his part, credited in his bank book as so much cash, the title to such check vests in the bank, whose only recourse against the depositor lies in his obligation as indorser.

In case of the failure of the bank so receiving the check, while still indebted to the depositor for the amount credited to him on the deposit thereof, the depositor has no right to stop payment of the check in the hands of an indorsee of the bank.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*C. Van Santvoord,* for the appellant.

*Fisher A. Baker,* for the respondent.

DANIELS, J.:

The check upon which the judgment was recovered, was made by the defendant and delivered to Edward F. Murray, the payee therein named, for a valuable consideration. Upon its delivery he became its actual owner, having the right to dispose of it in any manner

that he deemed to be proper.   At the time when it was received by him, and for a number of years previous to that time, he was a customer of, and kept a bank account with, the Merchants and Mechanics' Bank of Troy.   When the check was received by him, he indorsed it and delivered it to this bank.   In the deposit ticket made at the time, and containing a statement of it, it was entered as a check for $305.   This ticket contained no further intimation from which it could be inferred that the check was deposited merely for the purpose of collection, than the entry made of it in this form upon the ticket.   The ticket on the other hand indicated the general intention to be, to make an unqualified deposit of it in the bank.   But from the circumstance that it was mentioned in the ticket as a check, it might be inferred that it was received only for collection, if that was all that was done with it at the time, but it was not, for the depositor produced it and had it entered together with another check for the sum of nine dollars, as so much cash in his bank account. After the entry was so made, the book was passed back to him, and he observed what had been done for the purpose of understanding the entry which was made, and on finding it to be correct left the bank.   This entry was evidence of the fact that the check had been delivered after its indorsement to the bank with the intention that it should be entered, as it was, as so much cash to the credit of the depositor.   It was due at once, and drawn upon the Corn Exchange Bank in the city of New York.   And it was undoubtedly expected that it would be paid on its presentation, which for all the purposes of the parties would be equivalent to so much money.   The conclusion that it was intended to be deposited as cash, is further confirmed by preceding transactions of a similar nature, in which deposits of checks were made by the same depositor in this bank.   Upon this subject, as well as the deposit of this particular check, he was examined as a witness for the defendant on the trial of the action, and testified as follows :

Q. Do you know of anything that occurred at the time of the deposit besides the mere fact of handing in the deposit slip and these two checks ?   A. No, sir.

Q. Nothing contrary to your usual course in making deposits, so far as you know ?   A. No, sir.

Q. This pass book was returned to you ?   A. Yes, sir.

Q. And at the time did you examine it and see the deposit was entered? A. Yes, sir; I always do that, compare the check book, with my deposit book.

Q. You are in the habit of depositing checks on New York banks? A. Yes, sir, whenever I have got them.

Q. Since 1872, you have deposited checks on New York in this bank? A. Yes, sir.

Q. Was it the custom of the bank to give you credit for checks on New York, the same as if they were money? A. Yes, sir.

Q. During the whole time since 1872? A. Yes, sir.

Q. Do you know whether that applied to checks on all cities in the United States, or only to New York? A. To all, I believe.

By these statements it appears that what was done upon this occasion was conformable to the preceding practice of the bank with this depositor, and clearly justified the conclusion that the check was designed to be, as it actually was, deposited as so much money. The transaction was equivalent in its effect to the discount of the check by the bank, the deposit of the proceeds by the customer, and a credit for the amount in his bank account. In this respect the case materially differs from those relied upon in support of the appeal, for in those cases the instruments in controversy were either deposited in terms for collection, or the inference that such a deposit alone was intended, was created by the circumstance that the bills were of the description known as short bills, and for that reason not at the time available to the customer, or they were payable at a future day, or entered in terms as bills in the account of the bank with the depositor. In *Scott* v. *Ocean Bank* (23 N. Y., 289), stress was placed upon the fact that it was neither shown, nor claimed, that the party on the receipt of the bills remitted, was entitled to have a credit in his account for the amount of them, neither was it found that in the course of the dealings between the parties, any credit was in fact given to the depositor for the bills remitted until the proceeds thereof were realized and received. (Id., 290.) In *Dickerson* v. *Wason* (47 id., 439), the note was in terms sent for collection, and in *Shipsey* v. *Bowery National Bank* (59 N. Y., 485), it was found as a fact that the check was sent to the bank for collection under an arrangement by which the bank was to be paid a commission for its service in making the collection. Upon that subject

it was said by Folger, J., upon whose opinion the case was decided, "that the defendant received the check from the plaintiff not as becoming the owner of it, but as his agent for a compensation to collect it." In *Giles* v. *Perkins* (9 East, 12) the bills deposited were not due, and from that circumstance it was inferred that they were not received by the banker as so much cash, but only for the purpose of collection, and for that reason not available by the customer until their proceeds were actually obtained. *Thompson* v. *Giles* (2 Barn. & Cress., 422) is a leading case upon this subject. The bills there were not entered in the customer's account as cash, but in terms as bills, and from that circumstance, although the amount was carried into the cash column, it was held that it did not follow that the customer assented to their being considered as cash. A similar consideration controlled the decision in the case of *Rowton* (1 Rose, 15), where the securities were received as short bills, a circumstance indicating that they were not at the time liable to the check or draft of the depositor. And a like consideration controlled the cases of *Buchanan* (1 id., 280), and *Sargeant* (1 id., 152). The principle already alluded to was likewise applied to the disposition of the cases of *Benson* (1 Mont. & Bligh, 120), and *Ex parte Barkworth* (2 De Gex & J., 194). In all these cases, as well as the additional one of *Montgomery County Bank* v. *Albany City Bank* (3 Seld., 459), the instruments were delivered by the customer to the bank expressly for collection, or the intention so to do was plainly to be inferred from the circumstance, either that they were not at the time due, or were entered in terms as bills in the customers' account. For that reason they were received by the bankers simply as the bills of the owners. They were delivered for a specific purpose contemplating that the person from whom they were received still continued to be vested with the title to them, and they were accordingly at their risk.

But neither of these circumstances existed in the present case. The check was due at the time when it was deposited and entered as preceding instruments, for a similar nature had been in the customer's account as so much cash. He was in this instance as he had been in others preceding it, aware of that fact, and in no manner dissented from what had been done, and it was to be presumed, from this circumstance, that the bank received and deposited the

check as so much cash, with his consent and under his authority. It was not delivered to the bank for a special or specific purpose, but upon general account; and it was so received and at once carried to his credit as so much money. Where that is the disposition made of such an instrument with the assent or authority of the depositor, the title to it at once vests in the bank receiving it, and that is held to be the law in the cases already cited. It is from that time at its risk, and the only recourse which can be taken afterwards, as to the depositor in case of non-payment, is that which may be secured by means of the indorsement and charging him in the usual way as an indorser. (*Ex parte Prase*, 1 Rose, 232, 240.) By the acceptance of the check, by the bank receiving it as so much money, it became the debtor to the customer to the extent of the amount credited on account of it. (*Bank of Republic* v. *Millard*, 10 Wall., 152; *National Mahaiwie Bank* v. *Peck*, 127 Mass., 298.) And while he did not draw checks or drafts against it, but the bank was largely his debtor, he still had the right to do it if he had been so disposed. The account, including the amount of the check, stood with his assent as so much money subject to his disposal, and because of that circumstance he ceased to be the owner of the check, and the title to it became vested in the bank as its own property, and subject to its risk in case of loss. In *Matter of Franklin Bank* (1 Paige, 249) the chancellor considered the law to be that money or bills deposited in a bank, became its property and the depositor a mere creditor for the amount. It was then added, " if they are stolen, lost or destroyed, or become of no value, the bank sustains the loss and he is still a creditor. He has no claim upon the money or bills deposited. The officers may use them as they please for the general purposes of the institution, and he is to all intents a general creditor of the bank." (Id., 254, 255.) This general proposition was recognized as the law in *Clark* v. *Merchants' Bank* (2 Comst., 380). In the opinion upon which the case was decided, the conclusion of Lord ELDON, by which it was held that if the bills were entered as cash with the knowledge of the customer, and he drew, or was entitled to draw upon the banker as having that credit in cash, he would thereby be precluded from recurring to the bill specifically, was cited with approval. As to the case which was then before the court, it was held that the whole

arrangement was one of mutual convenience, because the depositor had the right to draw against the bills sent to his correspondent, and that circumstance was considered to be sufficient to vest the title to the instrument sent forward, in the party to whom they were sent. Substantially the same principle was observed and acted upon in the case of *Stuyvesant Bank* v. *National Bank* (7 Lansing, 197), where it was declared to be the general rule, that money, or checks, paid into a bank, cease to belong to the person paying them in, and become the property of the bank. (Id., 203.) This subject was very fully examined in a note to Paley on Agency, 233 and 234, and quoted by Story in his work on the same subject. (Story on Agency [4th ed.], 288.) There the circumstance was considered a controlling one, that the banker receiving the instruments derived from the transaction a general authority to negotiate them. That authority was considered as derived from the circumstance that the instrument was indorsed by the depositor and received by the bank substantially as so much cash upon his account. It was there said, that if the proceeds cannot be distinguished from the general stock of the banker, the right of the general creditor prevails, and the customer must come in ratably with the rest, and herein consists principally the evil of the indorsing of the bills by the customer, as it gives the banker the opportunity of negotiating them. (See, also, *Van Amee* v. *Bank of Troy*, 8 Barb., 312–316). As this check was transferred to and received by the bank, it became its property, and the fact that it had the right in case of non-payment upon presentment to charge the amount of it back in the account of the customer, did not change the nature of the transaction through which it was received, for that right resulted not from any agreement existing between the parties upon the subject, but from the rights which the bank might derive from proceedings afterwards taken, to charge the depositor as the indorser.

As this bank, by receiving the check as so much cash became its owner, it had the right to dispose of it as its own inclination or interest might dictate, and for that reason it transferred to the plaintiff a valid title, when it was transmitted and credited upon its account to the bank from which it was received. The fact that the bank first receiving the check failed the next day, did not divest its title to it, or create the right on the part of the depositor

to prevent its payment, as he appeared to have done. The plaintiff succeeded to the same rights when it received the check, as the bank from which it was received had acquired to it by its deposit. That was sufficient to authorize a recovery of its amount against the defendant as the maker.

The judgment in this case was accordingly right and it should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed.