AMERICAN UNION TRUST COMPANY, Respondent, v. NEVER BREAK RANGE COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted November 14, 1916, Opinion Filed December 30, 1916.

1. **BILLS AND NOTES:** Indorsement by Stamp: "Written Indorsement." The indorsement of the name of a corporation, payee of a promissory note, on the back thereof, by means of a rubber stamp, was a sufficient "written indorsement," under Secs. 10,001, 10,002, R. S. 1909, defining when an instrument is negotiated and

providing that the indorsement must be "written," where there was substantial testimony that such indorsement was ratified by the officers of the corporation, and especially is this true in view of Sec. 10160, defining "written" as including printed and "writing" as including print.

2. ———: **Indorsement in Blank.** Under Sec. 9980, R. S. 1909, a promissory note indorsed in blank by the payee is payable to bearer.

3. ———: ''Negotiation.'' A promissory note payable to the maker and indorsed by him in blank is "negotiated," under Sec. 10,001, R. S. 1909 by sale and delivery to a third person.

4. ———: **Purchaser: Sufficiency of Evidence.** In an action on a promissory note, evidence *held* sufficient to warrant a finding that one to whom the note was sent by the maker was the purchaser of the same.

5. ———: **Bona Fide Holder: Instructions.** In an action on a promissory note, defended on the theory that the negotiation of the note was wrongful and in derogation of the rights of defendant, in that the note "was improperly, unlawfully, fraudulently and surreptitiously obtained from defendant," the court instructed the jury that if they found that defendant had delivered the note to one S, either as purchaser or as defendant's agent to effect a negotiation thereof, that S delivered it to one B for the purpose of enabling him to determine whether or not a bank with which he was connected desired to purchase it, and that plaintiff bought it from B, before maturity, for a valuable consideration and in the usual course of business, the jury should return a verdict for plaintiff, *unless they further believed from the evidence that, at the time plaintiff purchased the note, it had knowledge or notice that the negotiation of the note was wrongful and in derogation of the rights of defendant.* *Held,* that the italicized portion of the instruction is not vulnerable to the criticism that it permitted plaintiff to recover in the absence of *actual* knowledge or notice on its part that the negotiation of the note by B was wrongful.

6. **APPELLATE PRACTICE: Conclusiveness of Verdict.** The weight of and the effect to be given the testimony, in an action at law, is primarily for the jury and then for the trial court, and the verdict will not be disturbed by the appellate court if it is supported by substantial testimony.

7. **INSTRUCTIONS: Refusal: Covered by Other Instructions.** The refusal of a requested instruction is not error, where its substance is fully covered by the instructions given.

8. ———: ———: **Not Based on Evidence.** A requested instruction which is not supported by the evidence is properly refused.

9. **BILLS AND NOTES: Sufficiency of Indorsement: Custom: Instructions.** In an action on a promissory note, executed by a corporation and payable to its own order, defended on the theory that

the note was indorsed merely by the name of the corporation stamped with a rubber stamp, the refusal of a requested instruction, that if the jury found that it was "unusual and not customary" for business corporations to use the name of the company stamped on the back of notes as an indorsement, then the name of defendant so stamped was sufficient notice that the note was not indorsed to make it the duty of plaintiff to investigate the authority under which such name was stamped, was properly refused, for the reason it omitted to state the facts necessary to establish a custom.

10. **INSTRUCTIONS:** Custom. An instruction which permits a finding to be predicated upon the nonobservance of a custom should state the facts necessary to establish the custom.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Connett & Currie* and *O'Hallaron & Lowenhaupt* for appellant.

(1) The court erred in refusing defendant's request for a directed verdict. There was no evidence upon which the plaintiff was entitled to a judgment or, at least, the judgment should have been for the defendant. Secs. 10,001, 10,002, R. S. 1909. (2) Instructions numbers 1, 2 and 6, given at the request of plaintiff, are erroneous. They do not state the law correctly and there is no basis for them in the facts of the case. Revised Statutes 1909, sections 10,001, 10,154; Bank v. Phillip, Admr., 172 Mo. App. 404; Miners v. St. Louis, 178 S. W. 211; Bank v. Hohn, 146 Mo. App. 704. (3) Instructions number three and five given at the request of plaintiff, are erroneous. Sec. 10,001, R. S. 1909; Miners v. St. Louis, 178 S. W. 211; Merchants v. Insurance Co., 110 Mo. App. 62; 7 Cyc, pp. 791, 926. (4) The court erred in refusing defendant's instructions numbered 3, 6 and 8. The defendant's given instructions do not cure the error in plaintiff's instructions. Wilks v. Railroad, 159 Mo. App. 727; Pyburn v. Kansas City, 166 Mo. App. 152; Goode v. Coal Company, 167 Mo. App. 175; Wojtylak v. Coal Co., 188 Mo. 283; Frederick v. Allgaier, 88 Mo. 603; State v. Railroad, 236 Mo. 382.

*Elijah Robinson, Collins, Barker & Britton, C. E. Kimball, Jr.,* and *C. K. Rowland* for respondent.

(1) This court will not pass upon the sufficiency of the evidence; besides, appellant cannot raise his first point as to there being no evidence, without printing all the testimony. Rule 15, St. Louis Court of Appeals; Nash v. Brick Company, 109 Mo. App. 600; Furstenfeld v. Furstenfeld, 152 Mo. App. 734. The note is in legal effect bearer paper. Sec. 9980, R. S. 1909. (2) Appellant cannot raise the point of alleged insufficiency of evidence to support the instructions. See authorities under I. No adverse presumption arises from the use of the rubber-stamp endorsement. Horner v. Railroad, 70 Mo. App. 285; 4 Am. & Eng. Enc. of Law, 258. There is no error in the instruction as to what constitutes a holder in due course. Sec. 10022, R. S. 1909. Notice of infirmity must be actual; knowledge must amount to bad faith. Sec. 10026, R. S. 1909; Reeves v. Letts, 143 Mo. App. 199. (3) If the note was executed, respondent is presumed to be a holder in due course. Sec. 10029, R. S. 1909. The error, if any, is harmless. Schuepbach v. Gas Co., 232 Mo. 612. (4) The third instruction is based on the theory that the note was endorsed by the corporation through its agent. No adverse presumption arises from the use of the rubber-stamp indorsement. (supra, II.) There is no error in the fifth instruction. (5) Defendant's instructions numbered 3, 6 and 8 were properly refused.

REYNOLDS, P. J.—Action upon a note executed by the Never Break Range Company, payable to its own order, the note dated May 1, 1911, due six months after date, with interest from date at the rate of six per cent. per annum. The name of the maker, Never Break Range Company, was imprinted in the body of the note with a stamp bearing that name and at the foot of the note and apparently

with the same stamp is stamped the name, "Never Break Range Co.," and written below this with a pen, "W. L. Culver, Prest." With the same stamp, apparently, and on the back of the note, is stamped the name, "Never Break Range Co." No individual or official signature, however, follows this.

In the petition upon which the case was tried, it is averred that the defendant negotiated that note and that thereafter and prior to its maturity plaintiff had purchased it for a valuable consideration in the ordinary course of business and it was delivered to plaintiff and that at all times since plaintiff has been the owner and holder of the note in due course. Averring demand for payment of the principal and interest and refusal to pay, and setting up why a copy of the note is filed instead of the original, judgment is prayed for the amount of the note, interest and costs.

The answer of the defendant denies the execution of the note or that defendant ever assigned it by indorsement prior to maturity thereof or at any time; denies that plaintiff is the owner and holder of it or that it had purchased any note of the defendant for a valuable consideration; alleges that the note had not been indorsed by the defendant; that it was a non-negotiable instrument; that defendant never received any consideration for it; that plaintiff now and at the time before the alleged or pretended purchase of the note, knew that the defendant had received no consideration therefor, and that the note was not negotiable and that it had not been indorsed by the defendant and knew that the note was improperly, unlawfully, fraudulently and surreptitiously obtained from defendant, and that no indorsement of the note was made by the defendant, all of which, it is averred plaintiff knew or had notice thereof.

Another defense was to the effect that the note had been replevied by defendant and was now in its possession, and that the action in replevin had not been tried and determined but was still pending, and

defendant asked that all proceedings on this note be stayed until the determination of the action in replevin. As no attention seems to have been paid to this defense, it is unnecessary to notice it further. This answer was duly verified.

On a trial before the court and a jury, a verdict was rendered in favor of plaintiff for the amount of the note and accrued interest, and judgment following, defendant duly perfected its appeal.

Without dealing with the evidence in detail further than hereafter noticed, it is sufficient to say that it was directly contradictory on almost every material fact in the case. There is substantial evidence on behalf of plaintiff to the effect that the defendant company, desiring to raise money, made out three notes, of which that in suit was one, each for $5000, all signed and indorsed alike, and that a Mr. Churchman, acting for defendant, sent them by mail to one Sims, who was a note broker and representative of a bank in Memphis, Tennessee. As to whether they were delivered to Sims, as agent, to dispose of them, or as purchaser, is not clear; the evidence is both ways as to that. Sims handed two of them to a man named Bonds, in Kansas City, the president of the Night and Day Bank, to submit them to the board of directors of his bank there. Bonds took these two notes and disposed of one of them to the Night and Day Bank in Kansas City on or about May 3, 1911. Bonds turned over the proceeds of that note to Sims, but retained the other note. When Sims asked him to return it, he refused to do so, saying he would keep it for a few days and pay Sims for it, which he never did. In point of fact he negotiated it on his own account with the plaintiff trust company in Kansas City and kept the money, apparently; certainly never paid defendant or Sims any of it. Sims disposed of the third note to a Mr. Hendrey for $5000 in cash and bonds. According to the testimony for plaintiff, Mr. Richardson, the president of the respondent company at Kansas City, when

Bonds, about May 2, 1911, presented this note for sale, called up the defendant company at St. Louis over the long distance telephone. The testimony of that president as to the conversation over the telephone with the representative of defendant will be set out later. As the result of that conversation the president of plaintiff company submitted the note to the finance committee of his company on May 3, 1911, the day after Bonds had left the note with him, and the finance committee, on the strength of the assurances which its president testified he had received from Mr. Culver and Mr. Churchman, bought the note, paying Bonds $5000 cash for it. Bonds disappeared and defendant, as stated, has never received anything for the note, except so far as it was included with the $10,000, and possibly some other secureties that were turned over to it by Mr. Sims on account of the purchase, as he says, of the three notes calling for $15,000. That is practically the case.

There are five points relied upon for a reversal. Of these in their order:

First, the refusal by the court of the defendant's request for a directed verdict, it being claimed that there was no evidence upon which plaintiff was entitled to judgment or "at least the judgment should have been for the defendant," citing sections 10,001 and 10,002, Revised Statutes 1909. These sections are in our Negotiable Instrument Law. Section 10,001 defines an instrument as negotiated when transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery. Section 10,002 provides that the indorsement must be written on the instrument itself or upon a paper attached thereto, the signature of the indorser, without additional words, being sufficient indorsement. We are unable to appreciate the force of the argument of the learned

counsel for appellant that these provisions of the statute demanded and, under the evidence in the case, authorized a directed verdict for the defendant. There is substantial evidence to the effect that the name of the defendant was stamped on the face of the note by an agent authorized to stamp it and that the signature following the stamped indorsement of the name of the defendant on the face of the note is the signature of the then president of the defendant, whose authority to execute the note is not challenged. The same party who stamped the name of the defendant on the body of the note impressed that stamp on the back. It is true that no officer of the defendant, or any person representing defendant, attested the stamped name of defendant on the back of the note, and it is true that in a literal sense the indorsement of the name of defendant on the back is not "written." There is, however, substantial evidence in the case to the effect that before the plaintiff purchased this note it called up Mr. Culver, the president of the company, and asked him concerning the note, calling his attention to the indorsement on the back as only being with a rubber stamp and not signed by any officer of the company, and that Mr. Culver stated to Mr. Richardson, then the president of the plaintiff company, that it was all right; that they were willing to supply the indorsement but that Mr. Churchman was handling the matter directly, and Mr. Culver asked Mr. Richardson to hold the telephone for a moment until he (Culver) called Churchman. Mr. Churchman, according to Mr. Richardson, thereupon took up the telephone conversation and stated to Mr. Richardson that the paper was all right; that they (defendant) had issued it and would supply the indorsement on the back if Mr. Richardson's company desired it; that they, that is defendant, did not think it necessary but were willing to have an officer of the company supply the indorsement. Mr. Richardson further testified that Mr. Culver said to him over the telephone on that occasion,

that they had made a great number of notes that way; that it was all right but if the plaintiff company wanted the indorsement of an officer of the defendant company, they were willing to supply that indorsement but they considered it all right, and according to the testimony of Mr. Richardson, Mr. Culver said substantially the same thing.

Moreover, an attorney, also an officer of the Night and Day Bank of Kansas City, testified that Mr. Sims, on the 2nd or 3rd of May, 1911, had in his possession these three notes of the Never Break Range Company, signed and indorsed as before stated, and had offered one of them to his bank. This officer called for Mr. Culver, president of the defendant at St. Louis, over the long distance telephone and the operator informing him that she had Mr. Culver on the line and that he was ready to talk, the attorney talked to a party at the other end of the line who said he was W. L. Culver, president of the defendant. The attorney told Mr. Culver that Mr. Sims had the three notes above described; that one of them had been offered to the Night and Day Bank for sale, and called his attention to the fact that the stamped indorsement of the name of the defendant company was not authenticated by any officer of defendant. Whereupon Mr. Culver said that if the bank purchased the note and would send it down he would put his signature as president under the rubber stamp indorsement; that it was an oversight that it had not been done; that the notes were all right and Mr. Sims was authorized to sell them. Whereupon the Night and Day Bank purchased one of the notes, paying for it in cash and bonds and these proceeds were turned over through Mr. Sims to the defendant. Mr. Culver, asked concerning this alleged conversation over the telephone with a representative of the Night and Day Bank of Kansas City, said that he did not remember having had but one conversation over the long distance telephone with any one at Kansas City, undoubtedly referring to the conversation

which he admitted he had with Mr. Richardson. While it is true that there is no clear identification of Mr. Culver as the party with whom the Kansas City gentleman had this conversation, it does appear that on the strength of it, one of these notes, which had been in the hands of Sims, was purchased by the bank or some customer of the bank, and the note afterwards being presented to Mr. Culver, the stamped name of the defendant on the back as indorser was attested by him as president. That also occurred as to another of these three notes.

This was substantially the testimony in behalf of plaintiff of the fact that the indorsement on the back of this note in the name of the defendant company with a rubber stamp was an authorized indorsement by defendant, and if desired by plaintiff would be further verified and authenticated by the signature of an authorized officer of the defendant company.

That this indorsement was not "in writing" in the literal sense of the word "writing" is entirely immaterial. It has been many times held that affixing a rubber stamp to an instrument is sufficient in law to fulfill the requirement that the indorsement or the name must be written or in writing, if the stamp is affixed with the intent of using it as an indorsement. For illustration, see Horner v. Missouri Pac. Ry. Co., 70 Mo. App. 285.

In that case (l. c. 291) our court said:

"The word 'writing,' in law, not only means words traced with a pen or stamped, but printed or engraved or made legible by any other device," citing Henshaw v. Foster, 9 Pick, 312. In that case the Supreme Judicial Court of Massachusetts had before it the question as to whether a certain ballot, which had been tendered by a voter at an election, conformed with the Constitution of that State, which provided: "Every member of the House of Representatives shall be chosen by written votes." The elector had tendered a printed ballot, as it appears, and the court held that this was sufficient

compliance with the constitutional requirement that
the ballot or vote should be written.

Section 2783, Revised Statutes 1909, part of our
statute generally referred to as the Statute of Frauds
and Perjuries, provides that no action shall be brought
in certain cases named, "unless the agreement upon
which the action shall be brought, or some memorandum
or note thereof, shall be in writing and signed by the
party to be charged therewith, or some other person
by him thereto lawfully authorized." This is sub-
stantially the English Statute of Frauds (29 Car, II,
c. 3). Construing this, it has been held that a printed
or stamped name is a sufficient signature, if adopted
or intended as such. [20 Cyc, page 275, subdivision 3,
and authorities there cited under note to that subdivi-
sion.]

Our Negotiable Instrument Act, however, section
10,160, Revised Statutes 1909, puts this question be-
yond debate, for it is there enacted that unless the con-
text otherwise requires, " 'Written,' includes printed,
and 'writing' includes print." All the elaborate argu-
ment by the learned counsel for appellant, therefore,
that this was not a written indorsement as required by
the law, is without merit, and whether this stamped
name of the defendant on the back of the note consti-
tuted an indorsement by defendant depended upon the
evidence as to the acts of the defendant in connection
with placing its stamped name on the back of this
note and subsequently so handling the note as to put
it into circulation. That it did so, that it ratified its
stamped name on the back of this note as its act, there
is substantial evidence. Under substantial evidence in
the case, to the effect that this indorsement by stamp
had been ratified by defendant's proper officers, its
effect, under section 9980, Revised Statutes 1909, it
being an indorsement in blank, is to make the instru-
ment payable to bearer.

Learned counsel for appellant argue with great
earnestness that this note never became negotiable

paper, and was never negotiated, as negotiable paper is defined in section 10,001, Revised Statutes 1909. But if it was indorsed with a stamp and that stamp held out to be put there as the act of the defendant and as an indorsement, and there was substantial evidence to that effect, then the note was negotiated when passed over by defendant to a third party, if that was done.

We rule this first point against appellant.

The second point urged by the learned counsel for appellant is that three instructions given at the request of plaintiff are erroneous in that it is claimed that they do not state the law correctly, and that there is no basis for them in the facts of the case. One of the principal objections made is that by these, or one of them, the jury are told they can find for plaintiff if, among other things, they find and believe from the evidence that the defendant delivered the three notes, which had been issued at the same time, that in controversy being one of them, to one Sims, "either as purchaser thereof, or as defendant's agent to effect a negotiation thereof for defendant's benefit." Those learned counsel contend very strenuously that there is not a particle of testimony in the case to show that Sims was the purchaser of these notes. That contention is disposed of adversely to the claim of those counsel by the testimony of Mr. Sims, which, as far as this point is concerned, is set out *verbatim* in the supplement abstract furnished by respondent. Mr. Sims, as noted, was the man to whom these three notes, the one in suit being one of them, were delivered by Mr. Churchman, the financial agent in the matter for the defendant. Mr. Sims was asked for what purpose Mr. Churchman had delivered these notes to him. He answered that he had bought the notes from Mr. Churchman. Asked, "You bought the notes from Mr. Churchman? A. Yes, sir." Further along Mr. Sims being asked if he had made any payments or given any consideration to any one for those notes at the time, testified that he had paid Churchman part on the notes,

paid him $10,000; not for any particular one of the
three notes but on account of all of them, which totaled
$15,000, and asked if he had contracted to take these
three notes and pay $15,000 for them, he answered,
"Yes," that he had paid $10,000 on the three notes.
Whereupon Churchman had delivered the three notes
to him. That was a negotiation of them, if he pur-
chased, as he said, and they were delivered to him.
So that there was no error in this instruction in so
far as it submitted to the jury the question as to
whether the notes had been delivered to Sims, "either
as purchaser thereof, or as defndant's agent to effect
a negotiation thereof for defendant's benefit."

Counsel further contend that the first and second
instructions given on behalf of plaintiff contain mat-
ter not at all pertinent to the case. We are unable
to concede that. In the first one, after submitting to
the jury the question as to whether these notes had
been delivered to Sims either as purchaser or as de-
fendant's agent to effect a negotiation thereof, the in-
struction is to the effect that if the jury found that
thereupon the note in controversy was delivered by
Sims to one Bonds, the person who sold the note to
the respondent, along with another note of the defend-
ant for the purpose of giving Bonds an opportunity to
determine whether or not he or the bank with which
he was connected might purchase the notes or one of
them, and if the jury also found and believed from the
evidence that the plaintiff bought the note from Bonds
before maturity and for a valuable consideration and
in the usual course of its business, the jury should find
their verdict for plaintiff, unless they further believed
from the evidence that at the time plaintiff purchased
the note it had knowledge or notice that the negotia-
tion of the note by Bonds was wrongful and in dero-
gation of the rights of defendant. This latter part of
the instruction is criticized because it is said that it
required the purchasing bank, plaintiff here, to have

had actual knowledge or notice that the negotiation of the note by Bonds was wrongful. We do not think that the instruction is subject to this construction. The word "actual" is not used in it and a jury of intelligent men were certainly capable of understanding that the fact of actual notice or knowledge was not required to be found. We do not think that either of these instructions is subject to the criticism made.

Practically the same criticism was made of other instructions given at the request of plaintiff, and that is the third point made by the learned counsel for appellant. We see no error to the prejudice of appellant in any of them. One of them, the third, told the jury that if they found from the evidence that the rubber stamp placed on the back of the note in suit was made by or under the direction of some officer or agent of the defendant authorized to use the stamp as an indorsement of the note, their verdict must be for plaintiff, unless they found from the evidence that before the negotiation of the note defendant notified plaintiff that defendant did not consider the rubber stamp indorsement binding. Another instruction (the fifth) also complained of, was to the effect that if the jury found from the evidence that before the plaintiff purchased the note in suit it called up over the telephone the office of the defendant company and talked with one Churchman, an employee or agent of the company, to whom plaintiff was referred by the president of the defendant company, and if the jury found from the evidence that Churchman told plaintiff that the rubber stamp indorsement was all right, and that defendant would supply other indorsement if desired, but that they did not think it was necessary, "then, under such circumstances, your verdict must be for the plaintiff, provided you further find that said Churchman had been authorized by the defendant to negotiate said note." We see no error in either of these instructions. There was substantial evidence to the effect that the stamp had been placed on the back of the note by one authorized to do so. Church-

man, according to substantial evidence, was an employee of defendant and acting as its financial agent in these matters; was the one who had affixed this stamp on the back of the note, and there was substantial testimony that Mr. Culver, as president, had ratified it. It is true that Mr. Culver and Mr. Churchman, the clerk or financial agent of defendant, most emphatically denied this telephone conversation, as also one said to have been had between Richardson, Culver and Churchman at the Planter's Hotel in St. Louis, in which, according to Richardson, both of these gentlemen said the stamped name was all right and if Richardson required it to be done they would have an officer of defendant attest it. That left it a question of veracity between two sets of witnesses, depending on the credit which the jury gave them, and it is not for us, as an appellate court, to disturb a verdict where evidence is conflicting as here. The weight and effect to be given to that testimony is primarily for the jury, then for the trial court, and is in no manner with us as an appellate court in this action at law, so long as there is substantial testimony to support the verdict.

Error is assigned to the refusal of the court to give three instructions asked by defendant, numbered 3, 6 and 8. Number 3, in effect, told the jury that the name, "Never Break Range Co.," stamped upon the back of the note, raises no presumption of an indorsement of the note by the company, and it must be proved by a preponderance of the evidence that that name stamped on the back of the note was ratified and accepted by a duly authorized agent as the indorsement of the company, or their verdict must be for defendant. The substance of this instruction, so far as it goes, was fully covered by other instructions given, and its refusal is not reversible error. It was also unnecessary, for it appears that plaintiff, not satisfied with it, inquired about its validity.

The sixth instruction asked by defendant and refused was to the effect that Churchman had no power to indorse the note sued upon and that the name of

the defendant stamped on the back thereof by him is not an indorsement thereof by the defendant, and the verdict must be for defendant, unless it has been proved by a preponderance of the evidence that such stamped name was ratified and approved by W. L. Culver, president of the defendant, as an indorsement by defendant. That instruction was properly refused. It was misleading as to the authority of Churchman to stamp the name on the back. There was evidence tending to show that he had such authority. As far as the rest of the instruction is concerned, going to the matter of ratification, it was fully covered, and correctly, in other instructions.

The eighth instruction asked by defendant and refused is to the effect that if the jury found from the evidence that it was unusual and not customary for business corporations to use the name of the company stamped upon the back of notes as an indorsement, then the name, " 'Never Break Range Co.,' stamped upon the note, . . . was sufficient notice to the plaintiff that said note was not indorsed to make it the duty of plaintiff to ascertain whether or not said name was stamped upon or ratified by a duly authorized officer or agent of defendant as an indorsement of said note by the defendant." As said with reference to the other instructions, so far as this was correct, the points covered by it were covered by other instructions. Furthermore, there was evidence, as before noted, that plaintiff had made inquiry. The facts necessary to establish a custom are entirely omitted. The instruction was properly refused.

The last point made is that defendant's given instructions do not cure the error in plaintiff's instructions. In the first place, we have discovered no reversible error in the plaintiff's given instructions, and next, taking them in connection with the ones given at the instance of defendant, they correctly placed the law of the case before the jury on the facts in evidence.

We see no reversible error to the prejudice of appellant. The judgment of the circuit court should be and is affirmed. *Allen* and *Thompson, JJ.,* concur.