by absolutely disabling him in such a case from acting for himself, and at the same time for his principal."

In Innerarity v. Merchants' National Bank, 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 710, the court held that a director of a corporation, acting avowedly for himself or on behalf of another with whom he is interested in any transaction, cannot be treated as an agent.

The rule that an officer of a bank is powerless to bind it in any transaction in which he has a personal interest is also supported by Bank v. Purdy, 100 App. Div. 64, 91 N. Y. Supp. 310.

In Fowler v. Walch, 119 App. Div. 542, 104 N. Y. Supp. 54, the court held: "The president of a bank who procures a note made by himself and others to be discounted by the bank solely for the joint benefit of himself and the other makers cannot by acting or assuming to act for the bank make any agreement respecting the note which will in any way relieve the makers, himself included, from their obligation, if such agreement by the president has not been ratified by the bank otherwise than by his own acts."

This principle is clearly applicable to the attempted substitution of one note for another, as contemplated in the arrangement between Robinson and Stallo. It may have been a fact that the new note of the Harriman Securities Company was as well secured as the original notes, but Robinson, interested as he was in having the new note accepted by the bank, was not in a position to pass on that question, and Stallo is certainly chargeable with notice of his want of authority.

It is my opinion that the notes in suit have not been paid in whole or in part, and that the plaintiff is entitled to judgment in the sum of $20,000, with interest from December 17, 1909.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

N. Rockwood, of New York City, for appellant.
C. H. Payne, of New York City, for respondent.

PER CURIAM. Judgment and order affirmed, with costs, on the opinion of Leventritt, referee. Order filed.

---

(162 App. Div. 248)

MERCHANTS' NAT. BANK OF ST. PAUL v. SANTA MARIA SUGAR CO.
(No. 5700.)

(Supreme Court, Appellate Division, First Department. May 8, 1914.)

1. BILLS AND NOTES (§ 150*)—NEGOTIABLE INSTRUMENTS—"NEGOTIABLE NOTE."
      A written instrument by which the maker promised to pay to the order of the payee on a specified date in the city of New York $2,340 for the second installment agreed on of the price of a crane of the payee's manufacture, purchased on the date of the instrument according to the specifications of the payee's representative, dated and signed, was a "negotiable note," as defined by Negotiable Instruments Law (Consol. Laws, c. 38) §§ 20, 22.
      [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 55, 374–379, 405, 406; Dec. Dig. § 150.*
      For other definitions, see Words and Phrases, vol. 5, pp. 4770, 4771.]

2. BILLS AND NOTES (§ 356*) — INDORSEMENT — PURCHASER FOR VALUE — DISCOUNT BY BANK.
      Plaintiff bank discounted a note sued on for a customer before maturity, crediting the proceeds of the discount to the customer's account, which account at all times prior to the dishonor of the note contained a

balance in the customer's favor in excess of the amount due on the note, but if the earliest credits were applied to the earliest debits the proceeds of the discount would have been paid out prior to any notice acquired by the bank of any infirmity in the note. *Held* that, while the bank did not become a purchaser for value by merely crediting the proceeds of the discount to the customer's account, it did acquire such position when the proceeds were paid out, and that the same should be treated as paid out by an application of the rule that the first items on the debit side were chargeable against the first items on the credit side of the account.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 908; Dec. Dig. § 356.*]

Appeal from Trial Term, New York County.

Action by the Merchants' National Bank of St. Paul against the Santa Maria Sugar Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Root, Clark & Bird, of New York City (Emory R. Buckner, of New York City, of counsel, and J. Lloyd Derby, of New York City, on the brief), for appellant.

Coudert Bros., of New York City (Charles A. Conlon, of New York City, of counsel), for respondent.

CLARKE, J. [1] The action was to recover $2,340 on the following paper executed by defendant and delivered to the American Hoist & Derrick Company of St. Paul:

"I shall pay to the order of the American Hoist & Derrick Company on the 30th day of August, 1911, in the city of New York, the sum of two thousand three hundred and forty ($2,340) dollars currency, for amount of the second installment agreed on of a crane of their manufacture purchased on this date, according to specifications of their representative, Mr. H. S. Johannsen.

"Dated, Ingenio, Santa Maria, August 30, 1910.

"[Signed]    Santa Maria Sugar Company, Bernard Pons.

"For $2,340.00 Cy. together with interest at 6% per annum to August 30, 1911."

The complaint alleged that thereafter and before its maturity, to wit, on or about March 29, 1911, said American Hoist & Derrick Company indorsed and delivered said note to the plaintiff for value.

Upon the trial it was stipulated that the plaintiff is a corporation organized under the National Banking Laws, and the defendant is a corporation organized and existing under the laws of the state of New York, and that the complaint should be dismissed without prejudice to the right of the American Hoist & Derrick Company of St. Paul to sue the Santa Maria Sugar Company if the court found that the instrument sued on is not a negotiable instrument, or if he found that the plaintiff is not a bona fide holder for value; and if the court found that the instrument sued on is a negotiable instrument and that the plaintiff is a bona fide holder for value judgment should be entered in favor of the plaintiff for the amount of the note sued on with interest and costs.

In its decision the court made findings of fact as follows:

That before maturity, and on or about the 29th of March, 1911, the American Hoist & Derrick Company discounted said note with the above-named plaintiff.

That the plaintiff credited the American Hoist & Derrick Company, which maintained a regular drawing account with the plaintiff, with $2,427.36, the value of said note.

That immediately after the discounting of said note the balance on hand to the credit of the American Hoist & Derrick Company was $22,661.13, and that between the date of the discounting of said note, which was March 29, 1911, and the time when the plaintiff was notified by the defendant of the latter's objection to the note, which was some time shortly after April 26, 1911, the American Hoist & Derrick Company deposited the sum of $129,547.60 with the plaintiff and withdrew from the plaintiff day by day such sums as to make the total of $110,999.58.

That during said period the smallest balance on hand at the bank to the credit of the American Hoist & Derrick Company was $6,294.04 on April 18, 1911.

That at the time the said note was discounted the American Hoist & Derrick Company indorsed said note "without recourse" to the plaintiff, and at the same time delivered to the plaintiff the following guaranty:

"For value received, we hereby guarantee payment at maturity, or at any time thereafter (setting forth the instrument). * * * Said note being indorsed by us to you without recourse we hereby waive notice, demand and protest on same."

That at maturity said note was duly presented for payment to the defendant and payment thereof demanded, but no part thereof was paid.

The stipulation hereinbefore referred to is then inserted.

That the plaintiff at the time it discounted said note had no knowledge or suspicion of any defect or infirmity in the note and had no such knowledge or suspicion until its receipt of defendant's letter dated Santa Maria, April 26, 1911.

And as conclusions of law: That the said instrument is a negotiable promissory note. That the plaintiff herein is not a bona fide holder for value without notice. That in accordance with the stipulation entered into the complaint be dismissed, with costs, without prejudice to the right of the American Hoist & Derrick Company to sue the defendant herein.

The main question involved upon this appeal does not seem to have been directly passed upon in this state. I agree with the Special Term that this instrument was a negotiable promissory note under the negotiable instrument law of this state. It is a promise in writing signed by the maker or drawer to pay a sum certain in money at a fixed future time to order as prescribed by section 20, and it is "an unqualified order or promise to pay" "though coupled with the statement of the transaction which gives rise to the instrument." Section 22 of the Negotiable Instrument Law (chapter 38, Cons. Law; chap-

ter 43, Laws 1909); Chicago Railway Equipment Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349; Mott v. Havana National Bank, 22 Hun, 354; Third National Bank v. Bowman-Spring, 50 App. Div. 66, 63 N. Y. Supp. 410; Equitable Trust Co. v. Taylor, 146 App. Div. 424, 131 N. Y. Supp. 475.

[2] The Trial Term found that until one month after plaintiff had discounted the instrument it had no knowledge or suspicion of any infirmity therein or equities existing. The question therefore is whether by discounting the note and by the subsequent transactions on the account it can be considered that value passed therefor. Of course, the mere discounting of the note and placing the amount of said discount to the credit of the holder would not then have constituted a transfer for value, because the bank would, under those circumstances, have parted with nothing, there would have been a mere bookkeeping entry. Scott v. Ocean Bank, 23 N. Y. 289, Citizens Bank v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765; Albany Co. Bank v. Peoples Ice Co., 92 App. Div. 47, 86 N. Y. Supp. 773. But if the sum had subsequently been checked out, then value would have passed.

The respondent claims that the bank always had on account a sum in excess of the amount of this note. The lowest balance on any day during the period was upwards of $6,000. But the appellant claims that the rule of law is, "The first money in is the first money out," that the first items on the debit side are charged against the first items on the credit side. It paid out continually, and the only reason that it had a balance at the end of the period was by reason of a continual flow of deposits; but those subsequent deposits went to meet subsequent drawings. This credit was exhausted long before the period expired.

In Fox v. Bank of Kansas City, 30 Kan. 441, 1 Pac. 789, the bank brought an action against Fox, the maker of the note, and the First National Bank of Emporia. The note was transferred by the payee to the Emporia Bank and by it indorsed to the Bank of Kansas City, which was the correspondent of the Emporia Bank and the latter had a general account with it. No money was forwarded to the Emporia Bank at the time the note was discounted, but the amount of the discount was simply credited. It appeared that the note was discounted and the amount credited to the Emporia Bank on February 15th; that at the close of that day the amount on the credit side of the account from the 1st of February was $52,802.36, the amount on the debit side $32,479.58, leaving a balance due the Emporia Bank of $20,322.78. During the subsequent five days ending February 21st, the Emporia Bank drew out $26,774.67, which, but for subsequent deposits by the Emporia Bank, would have overdrawn the account. In other words, within five days after this discount everything then due the Emporia Bank was paid to it, and it was claimed by plaintiff that at that time, if not before, plaintiff had fully paid the note and was entitled to the full protection of a purchaser for value. Mr. Justice Brewer said:

"This claim we think is correct. The general rule as to the application of payments, there being no special facts to interfere, is that the first payments

go to the oldest debts; so all the money drawn out by the Emporia Bank, in the absence of some special facts, was a payment by the plaintiff of the oldest deposits and discounts; and when, at the close of February 21st, the balance due February 15th had been fully checked out, the plaintiff had paid for every deposit and discount made by the Emporia Bank prior to February 15th. Shellabarger v. Binns, 18 Kan. 345."

In Dreilling v. First National Bank of Battle Creek, 43 Kan. 197, 23 Pac. 94, 19 Am. St. Rep. 126, at the trial the plaintiff bank showed that it bought the note before due, without knowledge of any defenses there might be to it. The note was given in payment of a threshing machine. In the sale of this machine a warranty was given, and the defense urged was that there had been a breach of the warranty, and therefore a failure of the consideration. The testimony established that the bank took the note at its face value before due, and gave the original payees of the note credit on their account. When the note was taken said payees had a balance at the bank to their credit of over $10,000, and it was proven that up to the time of this action their balance had never been less than $10,000. The testimony of the president of the bank showed that the amount to the credit of said payees at the bank when this note was placed to their credit had since been drawn out many times and replaced by new deposits, so that the amount of their credit, though often changed in character, had not been materially diminished in amount, but had been kept good by other notes, drafts, and money deposited subsequently. The court said:

"It is probably true that simply discounting a note and crediting the amount thereof on the indorser's account without parting with any value for it is not enough to constitute such bank a bona fide purchaser of the note. In this instance, however, this transaction was simply placing the note to the credit of Nichols, Shepherd & Co. alone, for they subsequently checked against it and exhausted the amount of their credit at the time this note was placed to their account, including the amount of this note.

"We think the fact of thus paying out the full amount makes them purchasers. It is conceded that the bank did not buy the note outright and pay for it at that time, but it certainly was debtor to Nichols, Shepherd & Co. for its amount; and the general rule as to the application of payments when there are no special facts to interfere is that the first payments go to the oldest debts. Under this rule the bank paid for it by allowing Nichols, Shepherd & Co. to check against and exhaust the amount of their credit at that time. This note was a part of that credit. It paid for it by cashing checks drawn upon it, and thus became a purchaser of the same for value. Fox v. Bank of Kansas City, 30 Kan. 441, 1 Pac. 789; Mann v. National Bank, 30 Kan. 412, 1 Pac. 579; Randolph on Commercial Paper, § 994."

To the same effect, United States National Bank v. McNair, 114 N. C. 335, 19 S. E. 361; Fredonia National Bank v. Tommei, 131 Mich. 674, 92 N. W. 348, and First National Bank v. McNairy, 122 Minn. 215, 142 N. W. 139; decided in June, 1913, citing the foregoing cases as well as Morrison v. Bank, 9 Okl. 697, 60 Pac. 273.

In National Park Bank v. Seaboard Bank, 114 N. Y. 28, 20 N. E. 632, 11 Am. St. Rep. 612, Vann, J., said:

"Where a payment is made upon general account with no discretion as to its application, the law applies it to the oldest items. That is, the first debits are to be charged against the first credits and the debt paid according to priority of time"—citing cases.

Examining the New York cases cited by the respondent: In Albany County Bank v. People's Co-operative Ice Co., 92 App. Div. 47, 86 N. Y. Supp. 773, after a review of the authorities, Mr. Justice Chase said:

"From the authorities quoted it will be seen that a bank is not a holder of a note in due course as defined by the Negotiable Instruments Law, when the proceeds of the note are simply credited to the person from whom it is purchased, and not paid out until the bank had notice of an infirmity in the instrument or defect in the title of the person from whom the note was purchased."

But he premised his discussion with the statement:

"The question is here free from any complication that may arise where such payee's account is an active one and the balance is materially changing from day to day. The evidence is undisputed that the proceeds of the note were deposited to the payee's account, and such proceeds of the note (except perhaps $15 thereof), and also a much larger amount remained on deposit with the plaintiff not only until the note was dishonored, but until long after the plaintiff brought this action, and so far as appears until long after the defendant's answer was served."

This is one of the cases cited in Citizens' Bank v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765. The last-mentioned case is authority only for the proposition that merely crediting the discount of a negotiable instrument by placing the amount of said discount to the credit of a customer does not make the bank the holder of the instrument for value. The question here involved was not in the case.

I am of the opinion that, as there is no controlling authority in this state to the contrary, we should agree with the well-reasoned opinion of Mr. Justice Brewer, supra, followed as it has been in five other states, and apply the rule recognized in National Park Bank v. Seaboard Bank, 114 N. Y. 28–35, 20 N. E. 632, 11 Am. St. Rep. 612, that the first debits are to be charged against the first credits. It follows therefore, upon the facts as found, that the bank was a bona fide holder for value. The second and third conclusions of law should be reversed and a finding made in lieu thereof that the plaintiff is a bona fide holder of the note for value without notice, and, in accordance with the stipulation, judgment should be entered for the plaintiff upon the note with costs.

The judgment appealed from should therefore be reversed, and judgment for the plaintiff entered as indicated, with costs to the appellant. All concur.