No. 22,810.

STATE SAVINGS BANK OF LEAVENWORTH, *Appellant,* v. E. H. KRUG, *Appellee.*

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Indorsement by Means of Rubber Stamp—Valid Indorsement.*  Where the name of the indorser has been placed on the back of the instrument with a rubber stamp by one having authority to do it, and with intent to indorse the instrument, it is a valid indorsement within the provisions of sections 37 and 38 of the negotiable-instruments law (Gen. Stat. 1915, §§ 6557, 6558).

2. SAME—*Evidence Showing Authority of Agent to Deliver Note.*  On the facts stated in the opinion, *held,* that authority to deliver may be

shown by proof of the actual delivery of the instrument by the person authorized to indorse it and receipt by the indorser of the consideration paid by the indorsee.

3. SAME—*Note Indorsed to Bank—Bank a Holder in Due Course.* Following *Dreilling v. National Bank,* 43 Kan. 197, 23 Pac. 94, and *Bank v. Quasebarth,* 104 Kan. 422, 179 Pac. 300, *held,* that in an action on a promissory note purchased by a bank from a depositor who takes credit for the proceeds and subsequently adds other deposits to his checking account, the fact that sometimes there was a balance in favor of the depositor, does not deprive the bank of its rights as a holder in due course where before the maturity of the note, or knowledge by the bank of any infirmities in it, the depositor has checked out the amount of the proceeds of such note.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed December 11, 1920. Reversed.

*M. V. B. Van De Mark,* of Concordia, and *W. W. Hooper,* of Leavenworth, for the appellant.

*Homer Kennett, Olin Hunter,* and *Tom Kennett,* all of Concordia, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The State Savings Bank of Leavenworth brought this action against E. H. Krug on a note given by him to the Fisher Machine Works Company of Leavenworth, in part payment for an ice-making machine. The answer alleged fraud and misrepresentations and breach of warranty on the part of the machine company and failure of consideration. It denied that the bank was a holder in due course. The jury returned a verdict in favor of the defendant for five cents and the court rendered judgment thereon. The bank appeals.

The sole question here is whether there was evidence sufficient to sustain a finding that the bank was not a holder in due course. The note, which was for $712.50, was dated February 15, 1918. The cashier of the Savings Bank testified that on March 9, 1918, he purchased two notes, including this one, from the Fisher Machine Works Company, signed by E. H. Krug. The face of the notes amounted to $1,412.50; he paid what was considered equivalent to cash; the machine works company took credit in the bank and had access to the money by checking account; at the time he purchased the notes he knew noth-

ing of any claim or any defense to them, nor anything concerning the transaction in which they were given; he first learned that there was any claim or defense to the note when it was sent for collection to a bank at Miltonvale and returned October 5, 1918, protested for nonpayment; before this the amount the bank had paid for it had been checked out by the machine works company; between March 9 and October 5, 1918, the company had checked out of their account approximately $18,-500; he had no previous understanding with regard to the purchase of the note; it was brought to bank by Mr. Masterson; they did not have much conversation; Masterson brought in the notes and said they wanted some money, wanted credit; the bank had no requirement that the Fisher Machine Works Company should have on deposit at the time of the maturity of any note purchased funds to take it up when it was due.

Mr. Masterson, formerly in the employ of the machine works company, testified that he had been the bookkeeper and accountant of the company for over twelve years and had charge of the notes and the bank account and deposits for the company; that he took the Krug notes to the bank and sold them for cash; that the company was given credit for the amount on its pass book, which was afterwards checked out in the regular course of business; that he sold all the notes of the company that were sold and that it was his duty to keep up the finances; that he was instructed by the officers of the company to sell the notes; that at the time he sold the notes to the bank he made no statement to the cashier with reference to the notes; that he had been instructed by the company to negotiate the notes for cash wherever he desired; that when he took the notes to the bank, and said to Mr. Potter, the cashier, "I have some notes we wish to sell, we need some money," the cashier said, "all right," looked at the notes and gave the credit on the pass book. He testified that he knew of no arrangement or agreement between the company and the Savings Bank by which the bank was to take their paper, and that if there had been such an agreement he would have known it.

In our view, the principal question involved is whether the manner in which the note came into the hands of the bank amounts to a commercial indorsement as defined by the negotiable-instruments law. The indorsement was by rubber stamp.

Defendant insists that this was not sufficient and that it requires a signature of the indorser in writing. Section 37 of the negotiable-instruments act (Gen. Stat. 1915, § 6557), provides that where the instrument is payable to order "it is negotiated by the indorsement of the holder completed by delivery," and section 38, (Gen. Stat. 1915, § 6558,) declares that the "indorsement must be written on the instrument itself or upon a paper attached thereto." The precise question has never been before the court. In *Flanders v. Snare,* 37 Pa. Sup. Ct. 28, decided in 1898, it was held that there was nothing in the negotiable-instruments law which prevents the use of a rubber stamp in the indorsement of drafts, checks and notes. In the opinion it was said:

"Of course, we are not to be understood as saying that an indorsement made by the use of a rubber stamp, any more than one made in manuscript, proves itself." (p. 31.)

It was held, however, that the testimony of the indorser showing that he had adopted that method of entering into the contract of indorsement was sufficient.

In the case just cited, the court reached the conclusion that an indorsement of a negotiable instrument made by the use of a rubber stamp would be valid and binding on the indorser before the passage of the negotiable-instruments law and that the legislature did not intend by the adoption of the act to make any change in that respect. And in the opinion it was said:

"Of course, the legislature knew that the necessities of trade had long before brought about the fact that almost the entire bodies of the various forms of commercial contracts in ordinary use were printed. But it would hardly be contended that after the maker of a note or the drawer of a bill had, for his own convenience and in accord with almost universal usage, selected such printed form and launched his obligation on the sea of commerce, he could thereafter be heard to deny his responsibility for it on the ground that the instrument was not 'in writing' within the meaning of the act of assembly." (p. 30.)

The only testimony introduced by the plaintiff was upon this point. After identifying the note in question, Mr. Fisher, the president of the company, stated that the indorsement was stamped on it with his authority by Mr. Masterson and in his presence.

In 8 Corpus Juris, p. 352, it is said:

"So also an indorsement may consist partly of a printed form to be filled up by the indorser, or an indorsement may be made by means of a rubber stamp."

(See, also, 3 R. C. L. 969.)

The statutory rule concerning the construction of statutes provides:

"The words 'written' and 'in writing' may include printing, engraving, lithography, and any other mode of representing words and letters, excepting those cases where the written signature or the mark of any person is required by law." (Gen. Stat. 1915, § 10973, subdiv. 18.)

(See, also, *Mayers v. McRimmon,* 140 N. C. 640.)

Aside from the indorsement, it is insisted by the defendant that the testimony of Fisher, the president of the machine works company, was not sufficient to show that Masterson was authorized to deliver the note to the bank for the purpose of completing the indorsement and sale, and that the evidence of Masterson, who testified that he had negotiated all the notes of the company for several years, being the testimony of the purported agent, was not sufficient. Fisher testified that the indorsement was stamped upon the note by Masterson in his presence and by his authority and that Masterson, as bookkeeper, was duly authorized by the company to make the indorsement on all notes. It is true that he did not testify that he authorized Masterson to deliver the note to the bank, but Masterson did deliver it, the bank recognized him as the agent with authority to deliver, and gave the machine company credit for the amount of the note, which the company checked out. This was sufficient to establish that the note was delivered by the authority of the indorser.

It seems that the note in question was secured by a chattel mortgage executed by Krug, which was duly recorded. It was not assigned nor transferred to the bank. Nine or ten months after the action was brought Fisher, as president of the company, sent a renewal affidavit to the register of deeds of the county where the mortgage was recorded, and he testified that they never assigned any of the mortgages, but they were kept alive until all the notes were paid, and that this was the reason for filing the renewal affidavit on this mortgage. Of course, if

the bank was a holder in due course, no act of the indorser subsequent to that time could destroy the rights of the bank.

Since the indorsement was a commercial one, and the note was delivered by authority, there remain but few questions to determine. There is no conflict in the evidence, but the defendant seems to rely upon certain circumstances as sufficient to justify the finding that the bank took the note with notice of its infirmities. These circumstances fall far short of being sufficient to justify a finding to that effect. The fact that the bank and the payee of the note were engaged in business in the same city was not sufficient to cast suspicion upon the transaction. Merchants and other business men discount their commercial paper usually at the bank with which they do business as depositors. The payee was engaged in a legitimate enterprise and the fact that it had once been involved in litigation with a customer who claimed that machinery sold to him was not as represented, even if it were shown that the bank knew all the circumstances of that case, would not tend to show that the bank was not a holder of this note in due course.

Both sides rely upon the books of the bank to show the amount of deposits to the credit of the Fisher Machine Works Company at the close of business March 9, when the note was discounted, and the condition of the account from time to time until September 30. The note was protested October 5, and there is no evidence tending to show that prior to that time the bank had any knowledge or information of the fact that Krug claimed to have a defense. The books of the bank showed that on March 9, the balance in favor of the company, including the amount of the two Krug notes deposited that day, was $4,853.53. The defendant insists that because there was a balance in favor of the company on each banking day from that date until September 30, at which time the balance in favor of the company was $2,300.86, the bank was not a holder in due course. But the evidence shows that between March 9 and September 30 the company had deposited notes to the amount of $3,718.70, and cash to the amount of $12,316.69. While it is true that on September 30 the balance in favor of the company was more than the amount of the note, the case falls squarely within that of *Dreilling v. National Bank*, 43

Kan. 197, 23 Pac. 94. In that case the testimony showed that the amount to the credit of the payee had been drawn out many times and replaced by new deposits, so that the amount to the credit of the payee, though often changed in character, had not been materially diminished in amount. In the opinion it was said:

"It is probably true that simply discounting a note and crediting the amount thereof on the indorser's account without parting with any value for it is not enough to constitute such bank a *bona fide* purchaser of the note; in this instance, however, this transaction was simply placing the note to the credit of Nichols, Shepherd & Co. alone, for they subsequently checked against it and exhausted the amount of their credit at the time this note was placed to their account, including the amount of this note." (p. 200.)

It was held that the bank was an innocent purchaser for value. The case was followed and approved in *Bank v. Quasebarth,* 104 Kan. 422, 179 Pac. 300. In the opinion in the last case it was said:

"The fact that the insurance company subsequently added other deposits to its checking account, and that sometimes there was a balance in favor of the company (as there appears to have been about the time the note became due), does not affect the attitude of the bank as a *bona fide* holder, nor deprive it of the right and the protection acquired when payment of the deposit was made through the checking out of the deposit on March 25, 1916." (p. 424.)

It was therefore held that the plaintiff became entitled to the status of a purchaser for value, not when the note against defendant matured, but when the bank's debt to the purchaser had been paid out by checking out the fund arising from the entry of the credit. In the case at bar, as in the case just cited, "this was done so long before any knowledge of defense to the note came to the bank that there is no good reason for dispute as to when the bank became a purchaser." (p. 425.)

The judgment will be reversed and the case remanded, with directions to enter judgment for the plaintiff for the amount of the note and interest.