# PINGREE NAT. BANK OF OGDEN v. McFARLAND et al.

No. 3522. Decided January 10, 1921. (195 Pac. 313.)

1. BILLS AND NOTES—BURDEN TO PROVE INDORSEMENT AND DELIVERY OF CHECK .ON PLAINTIFF. In an action to recover amount of check executed by defendant and in plaintiff bank's hands, where the answer denied the indorsement and delivery of the check, the burden was on plaintiff to prove the indorsement and delivery as alleged in the complaint.

2. BILLS AND NOTES—EVIDENCE HELD INSUFFICIENT TO ESTABLISH INDORSEMENT AND DELIVERY OF CHECK IN SUIT. In an action to recover amount of a check executed by defendant and in plaintiff bank's hands, in view of the pleadings, evidence *held* insufficient to establish indorsement and delivery of the check, as to which issues plaintiff had the burden.

3. BILLS AND NOTES—INDORSEMENT ON CHECK MAY BE TYPEWRITTEN; "WRITTEN." Under Comp. Laws Utah 1917, § 5848, subd. 4, indorsement of a check in typewriting is in compliance with section 4060, providing such indorsement must be "written" on the instrument.

4. BILLS AND NOTES—DEFENSES AVAILABLE AGAINST PAYEE AVAILABLE AGAINST TRANSFEREE WITHOUT INDORSEMENT AND DELIVERY. Under Comp. Laws 1917, § 4078, where there was no indorsement at all of the check by the payee in transferring it and no delivery for value, the transferee stands in no better position than the payee, and every defense available against the payee is available against the transferee in favor of the drawer of the check.

Appeal from District Court, Second District, Weber County; *A. W. Agee,* Judge.

Action by the Pingree National Bank of Ogden, Utah, against Archie McFarland and R. D. Rogers and others, copartners doing business under the firm name of the Western Live Stock Commission Company. From judgment for plaintiff, defendant McFarland appeals.

REVERSED, and case remanded for new trial.

*Ray Van Cott,* of Salt Lake City, for appellant.

*J. N. Kimball,* of Ogden, for respondent.

THURMAN, J.

This is an action to recover the amount of a bank check executed by the defendant Archie McFarland directing the Utah State National Bank of Salt Lake City to pay the defendant Western Live Stock Commission Company (hereinafter called company), or order, the sum of $4,300. The check purports to have been issued April 20, 1917. The complaint alleges that the defendants indorsed the check and delivered it to plaintiff for value; that it was presented to the Utah State National Bank for payment, which was refused, of all of which defendants had notice. The defendants Lee, Cain, and McFarland filed separate answers to the complaint. The other defendants either were not served with summons or defaulted. At the close of the trial the action was dismissed as to all the defendants except McFarland. It is not necessary to state in detail the answers of the defendants as to whom the action was dismissed except to say that they denied every allegation of the complaint tending to show plaintiff's right to recover.

The defendant McFarland (hereinafter called appellant) admits the corporate capacity and business of the plaintiff, admits making the check referred to in the complaint, but alleges that it was executed on the 16th day of April, 1919, instead of on the 20th, as alleged in the complaint. The answer also alleges that the check was executed by appellant and delivered to the company in exchange for its check on the First National Bank of Ogden for the same amount; that appellant presented the check so received to said First National Bank on the following day for payment, and payment was refused; that at the time he received said check and executed his own in exchange therefor it was understood

and agreed between him and the company that his check to the company was not to be presented for payment prior to the 20th day of April, 1919, nor until he had received payment on the check issued to him by said company which was to be paid on presentation. Appellant further alleges that he has not received any consideration for the check which he issued to said company. He denies that the check in suit was indorsed by the defendant company, or that said company delivered it to the plaintiff. Appellant denies, generally, every allegation of the complaint, except as otherwise admitted in his answer.

In addition to the foregoing, appellant as further defenses alleges: (1) That if plaintiff received his said check at all, it did so without paying for or parting with any valuable consideration therefor and that it suffered no loss thereby; (2) that, if plaintiff received said check, it did so as agent of the payee and indorsee thereof and for the purpose of collection only; (3) that on the 18th day of April, 1919, he notified the said company of the nonpayment of its check to him and that he had stopped payment of his check to the company, and at said time requested the company to immediately return to him the check he had issued to it; that said company thereupon informed him that the check was in plaintiff's bank; that the company would get the check and deliver it to him immediately and before his check to the company became due; that said company failed and neglected to return the check.

The court, to whom the case was tried without a jury, found that all the allegations of the complaint were true, and in addition thereto found that the check in suit was given by appellant to the company for a check of said company on the First National Bank of Ogden for the sum of $4,300, dated April 16, 1919, in which said appellant was named as the payee; that said check on the next day, to wit, on the 17th of April, was presented to said bank for payment and payment thereof refused; that notice of said demand and refusal was duly given to said company; that said defendant, McFarland, is still the owner and holder of said check. The court made

other findings not material to consider at this stage of the opinion. Judgment was entered for plaintiff. This appeal is taken to reverse the judgment.

There is little or no conflict in the evidence. Appellant controverts the conclusions deduced therefrom. The record discloses the following facts: Appellant, on the 16th day of April, 1919, executed and delivered to the company, as payee, his check on the Utah State National Bank of Salt Lake City for the sum of $4,300, taking in exchange therefor said company's check on the First National Bank of Ogden to him, as payee, for the same amount. Appellant's check to the company was postdated and made payable on the 20th of April, 1919. On the day next following the execution of the check the company's check to appellant was presented to the said First National Bank for payment, and payment thereof refused. Appellant was notified of the refusal on the same day or the next day and immediately stopped payment of his check to the company, of which the company was duly notified at least as early as the 19th day of April and before appellant's check to the company became due. The evidence without conflict shows that the only consideration received by appellant for his check to the company was the company's check, payment of which was refused. Other transactions were had between appellant and the company, but the account between them had been balanced prior to the transactions above referred to.

Among other defenses alleged the answer denies that appellant's check to the company was indorsed by it or delivered to the plaintiff bank. The answers of all the defendants answering the complaint were to the same effect.

The trial court found that the check was indorsed and delivered to plaintiff for value as alleged in the complaint. This finding is challenged by appellant, and it is vigorously contended that there is no evidence to sustain the finding. The evidence relied on in support of the finding is confined to the testimony of one witness, the cashier of plaintiff's bank, and to a statement made in appellant's answer. The cashier testified, in substance, that he was cashier of plaintiff's bank

during the period covered by the transactions referred to; that he was acquainted with the defendants Rogers, Cain, Lee, and Pratt; that they were engaged in business under the name of the Western Live Stock Commission Company; that they did business with plaintiff's bank and had an account therein under the name above mentioned; that Mr. Cain attended to the banking business of the company; that the check sued on came into plaintiff's bank before the 20th day of April, 1919, and the bank held it until that date; that he did not know who brought the check to the bank; that it was indorsed when it was delivered to him; that the check came to the bank between the 2d and 20th of April; that he thought that Mr. Pingree, the president of the bank, received the check, but he did not see him receive it; that it came to his hands as cashier prior to April 20th; that it might have been the 10th or 17th, he could not say just what day it came into the bank. The cashier was the only witness who testified as to how or when the check came into the bank, by whom it was received, and whether or not it was indorsed. It cannot successfully be contended that this evidence, standing alone, is sufficient to establish an indorsement and delivery of the check so as to constitute the plaintiff a holder in due course.

. Comp. Laws Utah 1917, § 4059, reads:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder, completed by delivery."

The issue made by the complaint and answer as to the indorsement and delivery of the check cast the burden upon plaintiff to prove the indorsement and delivery as alleged in the complaint. We have already stated that the testimony of the cashier upon that subject is insufficient. But it is contended by respondent that the testimony is supplemented by a statement made in one of the affirmative defenses set up in appellant's answer. The paragraph referred to in which the statement occurs reads as follows:

"For further answer and defense this defendant alleges: That

on the said 18th day of April, 1919, this defendant notified the said Western Live Stock Commission Company of the nonpayment of this said check given to this defendant, and that this defendant had stopped payment upon his said check and requested the said Western Live Stock Commission Company to return this defendant's said check to him immediately, and said Commission Company thereupon informed this defendant that his said check was in the plaintiff's bank, and that they, the said Western Live Stock Commission Company, would get the said check and deliver it to this defendant immediately, and before the day of payment of his said check, to wit, the 20th day of April, 1919; that said Western Live Stock Commission Company, in violation of its said promise, failed and neglected, and ever since has failed and neglected, to return or deliver to this defendant his said check."

The point is made by respondent that it appears from the language above quoted that on the 18th day of April, 1919, appellant was informed by the company that the check was in plaintiff's bank; that such statement implies that the company had left it there, and tended to prove that it must have been indorsed and delivered by the company. This is the effect of respondent's contention.

It would be going further than this court feels authorized to go to hold that such evidence, in view of the pleadings, is sufficient to establish an indorsement and delivery of the check. While it tends to prove that the company knew the check was in the bank, it also tends to prove that the company still had control of the check, could demand its return, and that it had not been negotiated in due course. The excerpt quoted from the answer is far from establishing plaintiff's contention. It thus appears that the excerpt quoted from the answer—a portion of which is relied on by respondent—is nullified, in effect, by another portion favorable to appellant's contention. It must be conceded that, if the check, notwithstanding it was in the bank, was under the control of the company and subject to its demand, as implied in the statement quoted, then it had not been negotiated in due course, and the bank was not a bona fide holder.

Mr. Lee, one of the defendants and a member of the company, was a witness for appellant as to prior transactions between appellant and the company. He was not examined

concerning the indorsement and delivery of the check to plaintiff. Counsel for respondent considers it a significant fact that he did not repudiate the transaction as to the negotiation of the check to plaintiff and was not asked concerning it by appellant's counsel.

As before stated, the burden was upon plaintiff to establish the indorsement and delivery of the check, and inasmuch as the plaintiff had rested without proving it, it was hardly to be expected that appellant would unnecessarily assume the burden. Furthermore, the witness Lee was a member of the company—a beneficiary of the check in question. His company had received credit therefor at plaintiff's bank at a time when appellant was not in any manner indebted to the company. Under these circumstances, notwithstanding appellant called him as a witness as to other transactions, he had a right to consider the witness as standing in a relation somewhat adverse to him as far as the check in suit was concerned. Besides this, the burden being upon plaintiff to prove the indorsement and delivery, we know of no reason why he was not just as available to the respondent as a witness as he was to appellant. There is nothing in the case to indicate that he was not at least as friendly to the respondent as he was to appellant. Everything considered, we are not convinced that there is any significance in the point attempted to be made by respondent concerning the witness Lee.

In our opinion, the fact that respondent did not call Mr. Pingree, the president of the bank, as a witness, or account for his absence, if he was absent, is far more significant as a circumstance against the respondent. Mr. Pingree, according to the testimony of the cashier, was the bank official who received the check. He knew from whom he received it, whether or not it was indorsed, and on what account and for what purpose it was received. Why was he not called? We have a right to presume from all we know of the case, his relation to the bank and probable financial interest therein, that he at least would not have been an unfriendly witness. Admitting that for some reason he may

not have been friendly, still the circumstances surrounding the case are such that he could hardly have avoided telling just what occurred when the check was received by him, from whom it was received, and whether it was indorsed for value, or indorsed at all.

The record shows that the purported indorsement was by typewriting from beginning to end, including the name of the indorser. The indorsement reads: ''Western Live Stock Commission Comp., J. A. Lee, Manager, Ogden.''

Concerning the character of the purported indorsement we are not disposed to adopt the hypercritical view of appellant's counsel that the signature of the indorser should be in writing. ''The word 'writing' includes printing, writing, and typewriting.'' Comp. Laws, Utah, 1917, § 5848, subd. 4.

We have no doubt as to the validity of a typewritten signature to an indorsement if the indorsement or delivery is made by the payee, or one having authority.

In Brady, Law of Bank Checks, § 38, at page 54, it is said:

"While a rubber stamp indorsement is valid and sufficient to transfer title to the instrument indorsed, when made by one having authority, such an indorsement, like every indorsement, does not prove itself, and one bringing an action on an instrument so indorsed must prove that it was so indorsed to him for value before maturity and without notice, where the indorsement is denied."

In 1 Daniels, Neg. Inst. (6th Ed.) § 688a, the doctrine is stated as follows:

"Writing and signature are necessary to the formal indorsement of a negotiable instrument; but no particular form of signature is necessary, any form adopted as such being sufficient."

We are of the opinion that the typewritten indorsement was a sufficient compliance with the provisions of Comp. Laws Utah 1917, § 4060, which provides that ''the indorsement must be written on the instrument.'' Such an indorsement is probably more susceptible of forgery     3 than an indorsement written with a pen or pencil, but that question is not involved in the instant case. It has been held, however, that the use of a stamp to indorse a check is sufficient to put the plaintiff on inquiry as to the actual au-

thority of the agent.    Brannan, Neg. Inst. Law (3d Ed.) p. 82.

The infirmity of the purported indorsement in this case is that it does not appear that the indorsement was made or the check delivered by the payee, or any one having authority. For that reason it was no indorsement at all and renders the check subject to any defense appellant might have against it. If this were a suit by the company against appellant to recover the amount of the check, the company would have no standing whatever if appellant pleaded a failure of consideration, as he has done in the case at bar. Without an indorsement and delivery for value in the present case the plaintiff stands in no better position. Every defense available against the company itself, under the facts disclosed by the record, is available against the plaintiff. This proposition in the law of negotiable instruments is elementary. Comp. Laws Utah 1917, § 4078; Brady Law of Bank Checks, pp. 71, 73; Brannan, Law of Neg. Inst. (3d Ed.) § 49, and cases cited; Norton, Bills and Notes (3d Ed.) p. 203.

It is contended by appellant that he was prevented from proving the understanding he had with the company to the effect that his check was not to be presented for payment until the check he had received from the company was paid. In this connection the point is made by appellant that, notwithstanding his evidence relating to that defense was rejected, the court, nevertheless, assumed to find that no such understanding was had. The record upon this point is confusing. It shows that appellant's counsel asked appellant, when examined as a witness, what conversation he had with Mr. Cain respecting the check. Objection was made by respondent and sustained by the court. What appellant expected to prove is not clearly shown, but, to say the least, it was material to one of the defenses relied on by appellant.

In view of the unsatisfactory condition of the record, this opinion should not be construed as deciding the question whether or not certain defenses may not be interposed against a postdated check which are not available against a

check payable at the date of issue. We purposely leave that question undecided in the present case.

The judgment of the trial court is reversed, and the case remanded for a new trial, at respondent's costs.

CORFMAN, C. J., and WEBER and FRICK, JJ., concur.

GIDEON, J.

I concur in the order reversing the judgment and remanding the cause for a new trial. I do so, however, not so much by reason of any defect in the indorsement or the absence of proof that the indorsement was made by some one authorized to make the same, but for the reason that the answer alleges and the proof shows facts that establish beyond controversy that the check was not enforceable in the hands of the original payee, and that it was obtained by representations that were not true. The check, to say the least, was illegally in the hands of the payee for the purpose of indorsement or transfer. The better rule seems to be that when such a state of facts appears it is not only incumbent upon the holder of the negotiable paper to show that he paid value for it before maturity, but he must go further and show that he had no knowledge or notice of the illegality or fraud. That the plaintiff did not do in this case. *Pierson* v. *Huntington,* 82 Vt. 482, 74 Atl. 88, 29 L. R. A. (N. S.) 695, 137 Am. St. Rep. 1029. See note 125 Am. St. Rep. 812.