[Civ. No. 7188. First Appellate District, Division One.—September 3, 1930.]

B. P. ALLENBERG, Respondent, v. RAPKEN & COMPANY, LIMITED (a Corporation), Appellant.

Lucius L. Solomons for Appellant.

J. H. Sapiro and Samuel M. Roeder for Respondent.

THE COURT.—An action by an assignee against the acceptor of a draft to recover the amount thereof. A judgment was entered for the plaintiff, from which the defendant appealed.

A draft for $1800 was drawn upon defendant by Caroni Products Company, a New York corporation. It was accepted by defendant on January 3, 1928, and was payable on March 10, 1928, at the Anglo & London-Paris National Bank in San Francisco. The evidence shows that the drawer, after acceptance and before maturity, indorsed the draft for value to Aetna Finance Company, a corporation. It is not claimed that the acceptance was without consideration or was induced by fraud, but at the time the draft was presented for payment the defendant claimed a set-off as against the drawer in the sum of $108.12. This amount represented the freight charges paid by defendant upon the purchase price of certain merchandise for which the acceptance was given, and which it was alleged the drawer agreed to pay. The instrument before its maturity was sent to the Federal Reserve Bank at San Francisco for collection, and about March 1, 1928, the evidence shows that defendant was so notified by the bank. Defendant thereupon offered to pay the draft less the freight charges, which offer the bank refused. The defendant then communicated with the drawer and made the same offer to it. The drawer accepted the offer and, according to defendant's witnesses, agreed to procure the return of the draft, at the same time requesting that the amount be remitted to it by telegraph. The defendant, however, mailed a check for the amount to the drawer, but on the receipt of a second request by the latter to remit by telegraph this was done on March 16, 1928, and payment of the check was stopped.

It appears that this amount was retained by the drawer and not paid to the indorsee. In the meantime the draft was presented for payment, which was refused, and the instrument was duly protested. Defendant alleged collu-, sion between the drawer and the indorsee in this transaction, and that the amount remitted constituted payment of the draft. The trial court found in accordance with the allegations of the complaint and against the defenses set up by the defendant. As grounds for the appeal it is contended that the decision is unsupported.

While defendant claimed that it was not advised of the indorsement to Aetna Finance Company before remitting the amount to the drawer, it made no request for an inspection of the instrument, which would have disclosed the facts. It further appears that the remittance by telegraph was made on March 16, 1928, although a notice of protest showing the name of the indorsee of the draft was mailed to defendant by a notary in San Francisco on March 13, 1928. It is a fair inference from the evidence that the notice was received by defendant before the date of the telegraph remittance and this was not denied. ██ The indorsement by the Finance Company to the collecting bank was made by means of a rubber stamp, which defendant contends was insufficient. This method of indorsement has been sustained in several cases. (*Metropolitan Discount Co.* v. *Davis,* 69 Okl. 111 [7 A. L. R. 672, 170 Pac. 707]; *American Union Trust Co.* v. *Never Break Range Co.,* 196 Mo. App. 206 [190 S. W. 1045]; *Pennington* v. *Baehr,* 48 Cal. 565; *Pingree Nat. Bank* v. *MacFarland,* 57 Utah, 410 [195 Pac. 313]; *Mayers* v. *McRimmon,* 140 N. C. 640 [111 Am. St. Rep. 679, 53 S. E. 447]; *State Sav. Bank, etc.,* v. *Krug,* 108 Kan. 108 [193 Pac. 899].) ██ The court found that due notice of nonpayment was given the defendant. The latter contends that this finding is unsupported. The finding was immaterial, as defendant was not entitled to notice of nonpayment and its obligation did not depend on such notice (Civ. Code, sec. 3170). ██ The rule is well settled that from the nature of the obligation the principal debtor is protected only where payment is made to the holder or his agent (8 Cor. Jur., Bills and Notes, sec. 828, p. 593). Under this rule payment by the acceptor to the drawer will not discharge the bill. (*Woodward* v. *Elliott,*

13 Ind. 516.) ▆ Likewise, payment to one not in possession is at the risk of the payor (*Herron* v. *Gear,* 26 Cal. App. 18 [145 Pac. 731]), and payment to the payee without requiring the production and surrender of the instrument is insufficient as against a transferee who is a holder in due course. (8 Cor. Jur., Bills and Notes, sec. 835, p. 598, and cases cited).

▆ The evidence shows that Aetna Finance Company, to which the instrument was indorsed as security for a pre-existing debt, was a holder for value (*Peoples State Bank* v. *Penello,* 59 Cal. App. 174 [210 Pac. 432]), and under section 3140 of the Civil Code "every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course . . . " ▆ It is the rule, however, that where this burden is cast upon the indorsee upon proof that he acquired the instrument for value before maturity in the usual course of business, and there are no circumstances creating the presumption that he knew the facts impeaching its validity, the burden of coming forth with evidence to show that the instrument was acquired with notice of defendant's equities is upon the latter (*Goodale* v. *Thorn,* 199 Cal. 307 [249 Pac. 11, 13]). Section 3137 of the Civil Code provides that "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." ▆ It has been held that the purchaser of a negotiable instrument before maturity is not bound to make inquiry as to the consideration or circumstances leading to its execution (*Kopperud* v. *Cookson,* 50 Cal. App. 180 [194 Pac. 748]), and that "mere knowledge of the facts sufficient to put a prudent man upon inquiry without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude the transferee from occupying the position of a holder in due course unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith" (*Goodale* v. *Thorn, supra; Popp* v.

*Exchange Bank,* 189 Cal. 296 [208 Pac. 113]). The evidence supports the conclusion that the instrument was acquired by the indorsee in good faith and without notice of defendant's equities. It is also clear that by the exercise of ordinary care the fact of the indorsement could have been ascertained by defendant and the loss, if any, due to the remittance to the drawer avoided.

The draft recited that the obligation of the acceptor arose out of the purchase of goods from the drawer. This recital imported merely that the agreement referred to was the origin or consideration of the instrument and not that the instrument was subject thereto (Civ. Code, sec. 3084, subd. 2). As held in the following cases, the recital was but a statement of the transaction which gave rise to the instrument and did not render it non-negotiable; *Utah Lake Irr. Co.* v. *Allen,* 64 Utah, 511 [37 A. L. R. 651, 231 Pac. 818]; *McCornick* v. *Gem. State Oil etc. Co.,* 38 Idaho, 470 [34 A. L. R. 867, 222 Pac. 286, 288]; *Merchants Nat. Bank* v. *Santa Maria Sugar Co.,* 162 App. Div. 248 [147 N. Y. Supp. 498]; 220 N. Y. 732 [116 N. E. 1061]; *Coopersmith* v. *Maunz,* 227 App. Div. 119 [237 N. Y. Supp. 1]; *American Exchange Nat. Bank* v. *Steeley,* (Tex. Civ. App.) [10 S. W. (2d) 1038]; *Arrington* v. *Mercantile Protective Bureau,* (Tex. Civ. App.) [15 S. W. (2d) 663]. The case of *Westlake Mercantile etc. Corp.* v. *Merritt,* 204 Cal. 673 [61 A. L. R. 811, 269 Pac. 620], which followed *Lane Co.* v. *Crum,* (Tex. Com. App.) 291 S. W. 1084, is not a decision to the contrary. There the draft contained the additional recital that "maturity is in conformity with original terms of purchase," and as pointed out in *American Exchange Nat. Bank* v. *Steeley,* where *Lane Co.* v. *Crum* is distinguished, this clause imported the existence of a contract whose terms determined the maturity of the draft, which was not true of the other recital.

The judgment is sufficiently supported, and no error is shown which would justify a reversal.

The judgment is affirmed.