[Civ. No. 17047.   Second Dist., Div. One.   Aug. 25, 1949.]

E. A. SASNER, Appellant, v. EDWARD B. ORNSTEN, Respondent.

Hindin, Weiss & Girard for Appellant.

No appearance for Respondent.

WHITE, P. J.—This is an action by plaintiff against defendant on three checks executed by the latter, two being made payable to one Lou Stein and the third to ''Cash'' and delivered to Stein. The uncontroverted evidence showed that the checks were given by Ornsten to Stein in payment of gambling debts. The evidence further showed that Stein endorsed the checks and negotiated the same to plaintiff, who instituted

this action to recover the amount of said checks in the total sum of $5,014.

By his answer defendant alleged that plaintiff was not a holder in due course of the checks in that he received the same with full notice and knowledge that they were given to evidence an alleged indebtedness for money lost by him to said Lou Stein at a gambling game in the county of Los Angeles.

The court found that the plaintiff was not a holder in due course of the checks and rendered judgment for defendant. From such judgment plaintiff prosecutes this appeal.

Respondent has filed no brief and appellant concedes that if there is any competent evidence in the record upon which the court could rightfully base a finding that he was not a holder in due course, then the judgment should be affirmed. The sole question presented is therefore, whether the record contains sufficient evidence to support the finding by the court that appellant was not a holder in due course.

Epitomizing the factual background which gave rise to this litigation the record discloses that at the time the checks in question were issued, April 14 and 16, 1946, plaintiff was manager of the Coral Isle Café in Los Angeles County. At that time the café was owned by plaintiff's brother and Phillip and Lou Stein, the last named being the payee on the checks in question. With reference to the circumstances under which he received the checks from the payee thereof plaintiff testified that 11 months prior to receipt of the checks "I loaned, about eleven months prior to that, $7400 to Mr. Stein. The checks were handed me in payment." That the balance then due on the foregoing loan was $6,300. There was introduced into evidence a cancelled check showing payment thereby from plaintiff to Lou Stein of the foregoing sum of $7,400.

Respondent testified that on three successive days during which period the checks were issued he played gin rummy with Lou Stein and one Cosgrove. That in the games he lost the amount of money represented by the total of the aforesaid three checks. That the checks were given in payment of such gambling losses. That the games were played in the upstairs portion of the Coral Isle Café. Respondent also testified with reference to the presence of appellant in and about the premises, that he had seen him there and, "I definitely know I saw him. I had words with him. I recall seeing him behind the bar and upstairs watching us play."

Appellant further testified that the upstairs room was not

used exclusively for card playing, that he had seen respondent playing gin rummy in tournaments conducted at the café, that he had observed him playing cards in the upstairs room but had never seen him play for money.

The four requisites necessary to qualify a person as a holder in due course are: (1) The instrument must be negotiable, complete and regular on its face; (2) the holder must have received the instrument before maturity, and without notice that it had been previously dishonored, if such was the fact; (3) the holder must have received the instrument in good faith and for value; and (4) the holder must not have had notice of any infirmity in the instrument or defect in the title of the person negotiating it (Civ. Code, § 3133).

The uncontradicted evidence in the instant case clearly shows that each check was regular and complete on its face. Appellant acquired the checks before maturity because a check regular on its face is payable on demand, and it is only when an instrument payable on demand is negotiated an unreasonable length of time after its issue that the holder is not deemed a holder in due course (Civ. Code, § 3134). The evidence herein is clear that the checks were negotiated and delivered to appellant on the day following the date of issuance on two of them and two days after issuance of the third check. That all three checks were promptly presented to the bank for payment. There was no unreasonable delay such as would deprive appellant of his status as a holder in due course.

It must also be held that appellant received the instruments here in question for value. Section 3105 of the Civil Code provides that a negotiable instrument is presumed to have been given for value, and section 3106 of the same code declares that an antecedent or preexisting debt constitutes value and is deemed such whether the instrument is payable on demand or at a future date. (See, also, *Robb* v. *Cardoza*, 110 Cal.App. 116, 122 [293 P. 851]; *Robb* v. *Cardoza*, 127 Cal.App. 588, 590 [16 P.2d 325].) The evidence in the case at bar is without contradiction that at the time appellant received the checks from Lou Stein the latter was indebted to the former in the sum of $6,300, representing the unpaid balance of an original indebtedness in the sum of $7,400 incurred about August 20, 1945, and that the checks herein were credited by appellant on account of such preexisting indebtedness for their full face value.

We come now to a consideration of the fourth requisite necessary to establish that appellant was a holder in due

course, viz., at the time the checks were negotiated, did he have notice of any infirmity in the title of Lou Stein, and which question is determinative of this appeal.　If appellant had actual knowledge at the time he received the checks that the same were given in payment of a gambling debt, then he was not a holder in due course because the consideration for the instruments was illegal and the title of the person negotiating them was defective (Civ. Code, § 3136).

As to what constitutes notice of defect in a negotiable instrument as distinguished from a nonnegotiable instrument, section 3137 of the Civil Code provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had *actual knowledge* of the infirmity or defect, or *knowledge of such facts that his action in taking the instrument amounted to bad faith.*" (Emphasis added.)

In *Barthelmess* v. *Cavalier,* 2 Cal.App.2d 477, 487 [38 P.2d 484], it is said: "It is, no doubt, the rule that when dealing with negotiable instruments,—unless there be something upon the face of the instrument, or the circumstances surrounding its negotiation, to arouse suspicion,—the purchaser (or pledgee) is not called upon to make inquiry concerning its execution or the consideration for which it was given, under penalty of having 'bad faith' imputed to him. And it may be stated as the accepted rule, at the present time, that mere knowledge of facts sufficient to put a prudent person upon inquiry will not affect the position of one as a *bona fide* purchaser or pledgee. More is required, actual knowledge unless 'the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith'. (8 Cor. Jur. 501.)" (See, also, *Witty* v. *Clinch,* 207 Cal. 779, 783 [279 P. 797] ; *Allenberg* v. *Rapken & Co., Ltd.,* 108 Cal.App. 99, 103 [291 P. 281] ; *Appel* v. *Morford,* 62 Cal.App.2d 36, 40 [144 P.2d 95].)

Conceding that the record contains no direct evidence of actual knowledge on the part of appellant as to any infirmity or defect in the checks, the question remains as to whether, under the evidence, the court was justified in concluding that the surrounding circumstances were so cogent and obvious that for him to remain passive and make no inquiry amounted to bad faith on his part.

When a judgment is attacked as being unsupported by the evidence the power of an appellate court in passing

upon this question is limited to a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the judgment rendered. And not only must all conflicts in the evidence be resolved in favor of the prevailing party but all legitimate and reasonable inferences must be indulged in to sustain the judgment. Furthermore, where the facts admit of two or more reasonable deductions, the reviewing court is without power to substitute its deductions for those of the trier of fact (*Harms* v. *Reed,* 73 Cal.App.2d 853, 860 [167 P.2d 747]; *Arundel* v. *Turk,* 16 Cal.App.2d 293, 295 [60 P.2d 486]).

The evidence in the case at bar has hereinbefore been narrated and it is unnecessary to here repeat it. Suffice it to say that the appellant was manager of the Coral Isle Café while Lou Stein, payee on the checks, was one of the owners of the café. Respondent testified that appellant actually watched the gin rummy games in which the former within three days lost the sizable sum of money here in question. And as observed by the trial judge in his summation of the evidence at the conclusion of the trial, "Also, another extraordinary feature of this is that instead of Mr. Stein depositing these and giving his own check to Mr. Ornsten to apply on the $7400, he takes well-known means of attempting to make valid a check which is otherwise invalid, that is, by handing it over to a third party."

When the facts and circumstances surrounding the relationship of the parties to this litigation and the circumstances under which the checks were given were regularly proven, the court was entitled to draw therefrom such deductions as were warranted by a consideration of the usual propensities of people, and the course of business, and to ground thereon such inferences as reason would dictate (Code Civ. Proc., §§ 1958, 1960). The fact, if it be a fact, that by reason of the conflict in the evidence had a judgment been rendered in favor of appellant it would be sustained is not the test on appeal. We therefore conclude that there is substantial evidence herein to support the court's finding that appellant "at the time that the checks were delivered to him had knowledge of the fact that these checks were without any consideration and were the result of an indebtedness for money lost at a gambling game in the County of Los Angeles, State of California."

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.